The STATE of Ohio, Appellant,

v.

BRYSON, Appellee.

[Cite *State v. Bryson* (2001), 142 Ohio App.3d 397.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77984.

Decided May 7, 2001.

398

*William D. Mason*, Cuyahoga County Prosecuting Attorney, and *L. Christopher Frey*, Assistant Prosecuting Attorney, for appellant.

*James A. Draper*, Cuyahoga County Public Defender, and *Patricia Koch Windham*, Assistant Public Defender, for appellee.

---

JAMES D. SWEENEY, Judge.

Plaintiff-appellant, the state of Ohio, appeals from a judgment of the Common Pleas Court granting the motion to suppress of defendant-appellee, Ian Bryson. Bryson was indicted for possession of crack cocaine in violation of R.C. 2925.11 and possession of criminal tools in violation of R.C. 2923.24. After careful review of the record, we affirm the judgment of the trial court.

On July 2, 1999, the Cleveland Police Department conducted a sobriety checkpoint at the intersection of Lee Road and Harvard Avenue. On the approach to the checkpoint were three signs, each four foot by four foot in size, notifying motorists of the checkpoint. The first sign read "Sobriety Checkpoint," the second sign read "Slow Down," and the third sign read "Stop."

Officer Charles Lipscomb, one of the officers assigned to the checkpoint that evening, was stationed in a patrol car in the second driveway of a Burger King, which was approximately one hundred five feet from the Harvard/Lee intersection and approximately two hundred forty feet from the first sobriety checkpoint. Officer Lipscomb was instructed to watch for and stop any car that attempted to leave the checkpoint once it had entered it. Specifically, he was directed to stop anyone who turned around after passing the first checkpoint sign.

At approximately 11:05 that evening, Bryson was driving a gray Buick east on Harvard. Upon noticing the checkpoint, Bryson made a left turn into a driveway and turned around. Officer Lipscomb observed this turnaround and instructed Bryson to return to the checkpoint with the use of his patrol car loudspeaker. Bryson did not respond to Officer Lipscomb's instruction. Officer Lipscomb then activated his overhead flashers in an attempt to pull Bryson over. Bryson continued driving at a slow rate of speed for approximately one tenth of a mile before he pulled over.

Officer Lipscomb approached the driver's side of the vehicle and asked Bryson for his license and registration. After Bryson stated that he did not have his driver's license, he was placed under arrest for driving without a license. Officer Lipscomb then inventoried the vehicle in preparation for its tow and discovered four glass crack pipes with crack cocaine on the floorboard at the base of the driver's seat.

On October 27, 1999, Bryson was indicted by the Cuyahoga County Grand Jury on one count of possession of crack cocaine in violation of R.C. 2925.11 and one count of possession of criminal tools in violation of R.C. 2923.24. On January 14, 2000, Bryson filed a motion to suppress the crack cocaine and drug paraphernalia found in his vehicle, arguing that the evidence was the fruit of an unconstitutional search.

A suppression hearing was held on April 18, 2000. During the hearing, Officer Lipscomb testified that he stopped Bryson because he made an abrupt turn-around after passing the first checkpoint sign. Officer Lipscomb also testified that he observed Bryson making furtive movements inside the car as if he were reaching for or hiding something under his seat. Bryson, on the other hand, testified that he turned around prior to reaching the first checkpoint sign in either the first or second business driveway approximately fifty feet past the Burger King. He claims that he turned around because he missed his turn at Lee Road due to the confusion at the intersection.

On May 9, 2000, the trial court journalized an entry granting Bryson's motion to suppress. The trial court made findings of fact and conclusions of law to support its decision to suppress the evidence. The trial court found that Officer Lipscomb's car was angled east toward the checkpoint and that his view of the checkpoint, approximately one hundred fifty to two hundred feet from the checkpoint, "may not have been optimal." The trial court also found that Bryson's left turn into the driveway was legal. The court determined that Officer Lipscomb lacked reasonable and articulable suspicion to stop Bryson, as follows:

"It is the opinion of this Court that Officer Lipscomb's vantage point of the checkpoint entrance was insufficient to determine conclusively that the Defendant turned around after the first sign. As the Defendant's turn was legal and cannot be proved to be within the first checkpoint sign, the officer lacked a reasonable and articulable suspicion to stop the Defendant. As the stop of the Defendant was without any cause, any evidence obtained in the search as the result of the stop is the fruit of a poisonous tree. Therefore, the evidence seized is suppressed."

The matter is now before this court on the state's appeal from that entry. The state raises two assignments of error that we will review in reverse order.

"II. The trial court erred in finding that defendant had not entered into the funnel of the sobriety checkpoint."

In the second assignment of error, the state claims that it proved by a preponderance of the evidence that Bryson had entered the funnel of the sobriety checkpoint. Bryson maintains that he made his turnaround prior to entering the

checkpoint area. The issue is whether the trial court erred in determining that Bryson turned around before the first checkpoint sign.

In a suppression hearing, the evaluation of the evidence and the credibility of witnesses are issues for the trier of fact. *State v.. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; *Cleveland v. Rees* (June 24, 1999), Cuyahoga App. No. 74306, unreported, 1999 WL 435747; *State v. McCulley,* (April 28, 1994), Cuyahoga App. No. 64470, unreported, 1994 WL 164013. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the credibility of witnesses and resolve questions of fact. *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141.

Appellate courts should give great deference to the judgment of the trier of fact. *Ornelas v. United States* .(1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640. Accordingly, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Klein, supra; State v. Armstrong* (1995), 103 Ohio App.3d 416, 420, 659 N.E.2d 844, 846–847; *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141.

The testimony at the suppression hearing conflicted as to whether Bryson actually entered the funnel of the checkpoint. Officer Lipscomb says Bryson passed the first checkpoint sign, and Bryson says he did not. The trial court listened to the witnesses and apparently found the testimony of Officer Lipscomb to be less credible on this important fact. Specifically, the trial court found that Officer Lipscomb was located one hundred fifty to two hundred feet from the first sign of the checkpoint and that his view "may not have been optimal." The trial court then determined that Officer Lipscomb's "vantage point of the checkpoint entrance was insufficient to determine conclusively that the Defendant turned around after the first sign."

Weight of evidence and credibility of witnesses are primarily for the trier of fact. When there is competent and credible evidence to support the lower court's finding, we cannot disturb the finding. Here, the trial court's determination that Bryson made a legal left turn into a driveway before the checkpoint area to turn around and that Officer Lipscomb's view of Bryson as he turned around was not optimal due to the distance between his patrol car and the point where the checkpoint began is supported by competent and credible evidence. Specifically, Officer Lipscomb was parked in the Burger King parking lot, which was approximately one hundred fifty to two hundred feet from the first sign. Thus, we will not substitute our judgment for that of the trial court on this issue. *State v. Treesh* (2001), 90 Ohio St.3d 460, 472, 739 N.E.2d 749, 765–766. Accordingly, this assignment of error is overruled.

"I. The trial court erred in granting defendant's motion for suppression of evidence where reasonable and articulable suspicion was present to support a *Terry* stop."

In the first assignment of error, the state claims that the evidence should not have been suppressed, because Officer Lipscomb was justified in stopping Bryson after his abrupt turnaround or, in the alternative, that Bryson's suspicious behavior and furtive movements after leaving the checkpoint provided independent justification to stop the vehicle. Bryson maintains that Officer Lipscomb had no reasonable suspicion to make the initial stop, because he made a legal turnaround in a driveway. The issue is whether Officer Lipscomb had a reasonable suspicion to stop Bryson's vehicle.

■ A reviewing court is bound to accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. However, the reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the appropriate legal standard. *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908–909.

■■ The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them *per se* unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Thus, a law enforcement officer may properly stop an automobile under the *Terry* exception if the officer possesses the required reasonable suspicion based on specific and articulable facts. *Delaware v. Prouse* (1979), 440 U.S. 648, 653, 99 S.Ct. 1391, 1395–1396, 59 L.Ed.2d 660, 667; *State v. Gedeon* (1992), 81 Ohio App.3d 617, 618, 611 N.E.2d 972, 972–973; *State v. Heinrichs* (1988), 46 Ohio App.3d 63, 545 N.E.2d 1304.

The rule that a search or seizure is unreasonable under the Fourth Amendment absent individualized wrongdoing has limited exceptions. For example, the United States Supreme Court has upheld brief, suspicionless seizures at a fixed checkpoint designed to intercept illegal aliens, *United States v. Martinez–Fuerte* (1976), 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116, at roadblocks to verify drivers' licenses and registrations, *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, and at sobriety checkpoints aimed at removing drunk drivers from the road, *Michigan Dept. of State Police v. Sitz* (1990), 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412.[1] However, the Supreme Court has never

---

1. The state of Ohio has upheld the use of sobriety checkpoints aimed at removing drunk drivers from the road. *State v. Bauer* (1994), 99 Ohio App.3d 505, 651 N.E.2d 46.

approved a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing. *Indianapolis v. Edmond* (2000), 531 U.S. 32, 32, 121 S.Ct. 447, 449, 148 L.Ed.2d 333, 337–338. Indeed, the court indicated that suspicionless roadblock seizures are permissible only if conducted according to a plan that limits the discretion of the officers conducting the stops. *Id.*

■ Here, the evidence at the suppression hearing demonstrates that Bryson was not initially pursued for any traffic violation. Rather, Bryson was ordered to stop because Officer Lipscomb believed that his avoidance of the roadblock created a reasonable suspicion of criminal activity. The trial court found that avoiding the roadblock by itself did not create a reasonable suspicion. We are not persuaded that the court's factual determination was clearly erroneous. Indeed, although no Ohio case deals with this issue directly on point,[2] the United States Supreme Court has found that the mere act of avoiding confrontation does not create a reasonable suspicion:

■ "A person need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." *Florida v. Royer* (1983), 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236–237.

Moreover, a number of other jurisdictions have specifically held that turning a car to avoid a roadblock is insufficient to create a reasonable suspicion, *State v. Powell* (Me.1991), 591 A.2d 1306; *State v. Talbot* (Utah App.1990), 792 P.2d 489; *Murphy v. Commonwealth* (1989), 9 Va.App. 139, 384 S.E.2d 125; *Snyder v. State* (Ind.App.1989), 538 N.E.2d 961, and that a person may avoid a roadblock if the person wishes to do so, *State v. Superior Court* (1984), 143 Ariz. 45, 47, 691 P.2d 1073, 1075; *Ingersoll v. Palmer* (1987), 43 Cal.3d 1321, 1344–1345, 241 Cal.Rptr. 42, 58–59, 743 P.2d 1299, 1315; *Little v. State* (1984), 300 Md. 485, 490–492, 479 A.2d 903, 906; *People v. Peil* (N.Y. Justice Ct.1984), 122 Misc.2d 617, 471 N.Y.S.2d 532.

■ We find that a driver's action in making a legal turn within sight of a roadblock does not give a police officer a reasonable basis to suspect that the driver is involved in criminal wrongdoing. This conclusion reflects "the realization that citizens will avoid contact with police for reasons other than fear of being caught for a crime they have committed. A completely innocent person

---

2. This court has given some guidance, although limited, on this issue. Specifically, in *State v. Graham* (Nov. 1, 1990), Cuyahoga App. No. 57622, unreported, 1990 WL 166457, this court determined that "there is no indication that those not wishing to enter [a] roadblock could not exit, turn around or remove themselves from the area to elude detection."

may wish to avoid the delay which a discussion with police may entail; others have a fear of police authority; still others resent and seek to avoid the 'hassle' of a stop which lacks any basis." *State v. Talbot, supra,* 792 P.2d at 494, fn. 11.

Accordingly, since Bryson had committed no traffic violation at the time that Officer Lipscomb directed him to pull over, we find that Officer Lipscomb had insufficient cause to stop Bryson for turning around prior to entering the checkpoint. It follows then that Officer Lipscomb had no reason to question Bryson about his driver's license and to learn of Bryson's suspended driving privileges. Therefore, Bryson's citation for driving while under suspension should never have been issued. Consequently, the search of his vehicle that resulted in the confiscation of the crack cocaine and drug paraphernalia stemmed from an initial violation of his Fourth Amendment rights. Accordingly, any evidence obtained as a direct result of this illegal detention should have been suppressed.

*Judgment affirmed.*

KILBANE, P.J., and COONEY, J., concur.