OPINION
{¶ 1} Defendant-appellant, Elwood W. Forbes, appeals his conviction in the Preble County Court of Common Pleas for possession of cocaine. For the reasons outlined below, we affirm in part, reverse in part, and remand.
 {¶ 2} On March 4, 2006, Trooper Shaun Smart of the Ohio State Highway Patrol observed an SUV with a California license plate following a semi-truck too closely on eastbound U.S. Interstate 70 in Preble County. The semi switched lanes before and after *Page 2 
passing Smart's sedentary cruiser. The SUV immediately followed behind the semi during both lane changes, maintaining its distance of approximately one quarter of a car length behind the semi. Smart followed the SUV and saw what he believed to be the passenger, appellant, attempting to throw something out the window. He initiated a traffic stop. Trooper Smart questioned appellant and the driver, Bobo Wince, and observed their nervous behavior. He moved the suspects to the location of a nearby and unrelated traffic stop where another trooper was present. There, Smart walked a drug dog around the vehicle. The dog aggressively alerted at the driver's side of the vehicle. Smart conducted a search of the vehicle, and discovered a package on the floor between the center and rear seats concealed by a piece of vehicle carpeting. The package contained approximately one kilogram of powder cocaine. Both appellant and Wince were arrested.
 {¶ 3} Appellant was indicted on one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(f), a first-degree felony. The count was accompanied by a major drug offender specification under R.C.2941.1410.[1] Appellant filed a motion to suppress evidence, which the trial court denied. Following a jury trial, appellant was convicted and sentenced to three years in prison. Appellant timely appeals, raising three assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT IMPROPERLY EXCLUDED A DEFENSE WITNESS UNDER EVIDENCE RULES 404 AND 608, THEREBY VIOLATING APPELLANT'S RIGHT TO PRESENT A MEANINGFUL DEFENSE AS GUARANTEED BY THE COMPULSORY PROCESS CLAUSE OF THE SIXTH AMENDMENT, THE DUE PROCESS CLAUSE OF THEFOURTEENTH AMENDMENT, AND ARTICLE I, SECTION 10 OF THE OHIO *Page 3 
CONSTITUTION." {¶ 6} Appellant argues that his constitutional rights were violated and the trial court abused its discretion when it excluded the testimony of his sole witness, George Nelson. Appellant disputed the knowing possession element of the drug offense, claiming from the outset that he did not know the cocaine was in the vehicle. Wince directly contradicted appellant's defense, testifying that appellant knew the drugs were in the vehicle and in fact had organized the transport. Appellant sought to present Nelson to rebut Wince's testimony. By way of proffer, Nelson testified that he had witnessed Wince selling cocaine on numerous occasions and that he had helped Wince conduct some of these deals.
 {¶ 7} The trial court excluded Nelson's proffered testimony on the basis of Evid.R. 404(B) and 608(B). The trial court's decision excluding the evidence will not be reversed absent an abuse of discretion.State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 122. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Id. at ¶ 130.
 {¶ 8} Wince's testimony provided key evidence against appellant. Wince characterized himself as a legitimate business owner who participated only in the transport of the cocaine in this incident. He repeatedly denied being a drug dealer himself, testifying that it was "not his line of work." Wince testified that appellant had propositioned him numerous times to transport drugs from California to New Jersey, and that he had repeatedly rejected appellant's offers. He eventually agreed to participate in the transport and provide his rental vehicle in exchange for $5,000. Wince maintained that appellant exclusively handled the cocaine, took apart panels in the SUV to find a place to hide it, and eventually stashed it underneath a folded row of seats.
 {¶ 9} Not only did Wince portray himself as a passive participant and appellant as the active orchestrator of the drug transport, but he also blamed appellant for the attempted cover *Page 4 
up after the search. Wince testified that he and appellant knew that their conversation in the back of the police cruiser, where they were placed during the search, would be recorded. The taped in-cruiser conversation reveals that appellant made the statement "I don't know nothing about nothing and you don't know nothing about nothing." Wince testified that he interpreted this statement as appellant's attempt to coach him not to give the police any information. Further, Wince testified that he and appellant met prior to trial while they were both out on bond and appellant provided him with a false story to tell so that their stories about the cross country trip were consistent.
 {¶ 10} As stated, appellant sought to present Nelson's testimony to rebut Wince's assertion that he himself was not a drug dealer. As correctly noted by the trial court, Evid.R. 404(B) disallows the introduction of evidence of other crimes, wrongs, or acts to prove that a person acted in conformity therewith. In addition, Evid.R. 608(B) prohibits the introduction of extrinsic evidence involving specific instances of conduct of a witness for the purpose of attacking a witness' character for truthfulness. Nelson's testimony regarding Wince's alleged past drug dealing therefore could not be introduced to prove that Wince acted in conformity therewith on the day of the incident or to attack Wince's character for truthfulness. Nelson's testimony was not intended to show propensity or to attack Wince's character for truthfulness, however.
 {¶ 11} We find a decision rendered by the Tenth District Court of Appeals to be instructive under these circumstances. In State v.Conley (March 21, 2000), Franklin App. No. 99AP-579, 2000 WL 290189, victim Calandra Robinson was robbed at gunpoint in a grocery store parking lot. Defendant, who was acquainted with Robinson, had accompanied his friend Kenny Wilson to the grocery store that day. Defendant claimed that Wilson and Robinson were arguing when he came out of the grocery store, and that he did not wish to get involved and stayed out of it. Robinson, however, asserted that Wilson robbed her at *Page 5 
gunpoint while defendant participated as a lookout.
 {¶ 12} A few months after the incident, defendant phoned Robinson's house and spoke to her husband. Robinson's husband testified at trial that, during this phone conversation, defendant offered to return half of Robinson's money to her if she agreed to drop the charges. Defendant testified, to the contrary, that he told Robinson's husband he did not wish to discuss his case over the phone and did not want to pay her husband for something he was not involved with.
 {¶ 13} At trial, defendant sought to present his aunt as a witness to rebut the testimony of Robinson's husband. Defendant's aunt, who had allegedly listened in on the phone conversation with Robinson's husband, was to testify that Robinson's husband said they would drop the charges if defendant would pay them $1,250. The aunt's testimony was offered for impeachment purposes, but the trial court excluded it as hearsay. Defendant was later convicted of robbery and aggravated robbery.
 {¶ 14} On appeal, the Tenth Appellate District reversed. In support, the appellate court cited Evid.R. 616(C), impeachment by specific contradiction, which provides:
 {¶ 15} "Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony. If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:
 {¶ 16} "(1) Permitted by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706;
 {¶ 17} "(2) Permitted by the common law of impeachment and not in conflict with the Rules of Evidence."
 {¶ 18} The court determined that defendant's evidence involved "specific contradiction" testimony that was an appropriate method of impeachment under Evid.R. 616(C)(2), governed by common law rather than the Rules of Evidence. The court noted that the *Page 6 
evidence was relevant to a material issue in the case because Robinson's husband's testimony that defendant offered to return half the money directly implicated defendant in the robbery.
 {¶ 19} Additionally, the court reasoned that the proposed testimony of defendant's aunt was relevant to the case "independently of the contradiction." The Staff Note to the 1998 amendment of Evid.R. 616(C) provides an explanation by Wigmore stating that extrinsic evidence of contradiction should be admitted if the evidence would be admissible "for any purpose independently of the contradiction." Staff Note, Evid.R. 616(C), citing 3A Wigmore, Evidence Section 1003, at 961 (Chadbourn rev. 1970). This is echoed in an early Ohio Supreme Court opinion, wherein the high court held that extrinsic evidence is admissible when "the matter offered in contradiction is in any way relevant to the issue * * * ." Kent v. State (1884), 42 Ohio St. 426,431.
 {¶ 20} Expounding on Wigmore's test, McCormick wrote that two types of facts were independently provable, one being facts that are relevant to the substantive issues in the case. Staff Note, Evid.R. 616(C), citing McCormick, Evidence Section 47, at 110-11 (3d ed.1984). TheConley court concluded that the testimony offered by Robinson's husband implicated defendant in the robbery, and therefore the proposed contradictory testimony by defendant's aunt was relevant to a material issue and therefore admissible as substantive evidence. See, also,Bedard v. Gardner, Montgomery App. No. 20430, 2005-Ohio-4196, ¶ 65-66.
 {¶ 21} The case at bar presents similar circumstances. Appellant's defense was chiefly predicated upon his opposition to the knowing possession element of the drug offense. Wince testified that he himself was not a drug dealer, and that the cocaine belonged to appellant. Wince's testimony directly implicated appellant as the kingpin in the transport of the cocaine. Nelson's proffered testimony involved "specific contradiction" testimony that was *Page 7 
an appropriate method of impeachment under Evid.R. 616(C)(2) and common law.
 {¶ 22} Furthermore, Nelson's testimony was not offered solely to impeach Wince. It was admissible "independently of the contradiction" as it was relevant to the material issue of whether appellant had knowledge of the cocaine in the vehicle. Wince's testimony implicated appellant in the offense. Nelson's proposed testimony was thus relevant and admissible as substantive evidence going to the material issue of ownership of the cocaine. Cf. State v. Williams (1986),21 Ohio St.3d 33, 37.
 {¶ 23} The veracity of Wince's testimony is a crucial issue in this case, in view of the fact that his testimony served as key evidence against appellant. Wince's testimony undercut the heart of appellant's defense, namely, appellant's disputing the knowing possession element of the offense. It is thus appropriate that appellant have the opportunity to challenge this evidence. Wince's characterization of himself as a legitimate businessman and not a drug dealer supported his claim that the drugs belonged to appellant. Nelson's testimony thus served to rebut Wince's self-characterization as a one-time drug courier and his assertion that the drugs belonged to appellant.
 {¶ 24} To disallow appellant the opportunity to challenge Wince's testimony is to blindly accept Wince's version of events. Wince had a motive to fabricate his testimony in view of the consequences of the cooperation agreement he entered into with the state. Under the agreement, Wince would testify against appellant and, in exchange, be permitted to plead guilty to a lesser offense.[2] His potential sentence was thereby reduced from three to 10 years under the original charge to six to 18 months or, perhaps, probation under the amended charge. Such a drastic reduction in punishment may have been an enticement for Wince to *Page 8 
falsely attribute all responsibility for the offense to appellant.
 {¶ 25} We conclude that the trial court abused its discretion in excluding Nelson's testimony. Appellant's first assignment of error is sustained.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE, AS THE POLICE VIOLATED APPELLANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THEFOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION."
 {¶ 28} Appellant claims that the trial court erred in denying his motion to suppress evidence because Trooper Smart unlawfully detained appellant in violation of his Fourth Amendment rights. Appellant asserts that the facts surrounding the stop did not justify the detention.
 {¶ 29} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 329, 332. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Bryson (2001), 142 Ohio App.3d 397, 402. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 30} We observe that there are two types of traffic stops, each requiring a different constitutional standard. State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, at 4. One is a typical noninvestigatory stop where an officer directly observes a traffic violation, giving rise to probable cause to stop the vehicle. Whren v.United States (1996), 517 U.S. 806, 810, 116 S.Ct. 1769;Pennsylvania v. Mimms (1977), 434 U.S. 106, 109, 98 S.Ct. 330. *Page 9 
Here, Trooper Smart's initial noninvestigatory stop of the SUV was supported by probable cause that the driver committed a traffic violation because Smart observed the SUV following another vehicle too closely.
 {¶ 31} The second type of stop is an investigative or "Terry" stop, which occurs where an officer has a reasonable suspicion based upon specific and articulable facts that an individual is or has been engaged in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 21,88 S.Ct. 1868. Here, Trooper Smart testified that Wince sat with his hands locked on the wheel and his eyes straight ahead on the road when Smart's cruiser came abreast of the SUV, and Wince would not even glance in the direction of Smart's cruiser. He also observed what he believed was the passenger in the SUV attempting to throw something, potentially contraband, out the window. These observations gave Smart a reasonable suspicion that the two men may have been engaged in criminal activity, warranting further investigation.
 {¶ 32} If during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may detain the vehicle and driver for as long as the new articulable and reasonable suspicion continues. State v. Myers
(1990), 63 Ohio App.3d 765, 771. Although Smart initially stopped the SUV due to a minor traffic violation, during the stop other facts arose justifying the continued detention.
 {¶ 33} As stated, Trooper Smart observed that both appellant and Wince behaved nervously throughout the stop. He also noticed that appellant appeared to be much more nervous than Wince, and stated at trial that it is unusual for a passenger to be more nervous than the driver. When Smart questioned the suspects about the attempt to throw something out the passenger window, both appellant and Wince claimed that appellant had been brushing his teeth and spit out the window. Smart had witnessed appellant put down his window and put his hands up to it, his fingers moving. Smart did not believe the tooth *Page 10 
brushing explanation to be consistent with the movements he had observed, and could not find any toothpaste or spittle on the outside of the vehicle on the passenger side. Smart also testified that appellant made very poor eye contact, had tears in his eyes, was fidgety, and had a visibly beating pulse in his neck.
 {¶ 34} The fact that Trooper Smart moved the suspects to the scene of the unrelated traffic stop is not cause for reversal. Smart reasonably believed that he may require back-up for his stop, and also wanted to assist his partner in the unrelated stop. Also, appellant and Wince agreed to the request and the move could not have caused much delay in view of the fact that the other traffic stop was a mere 0.5 miles away. See, e.g., State v. Perry, Preble App. No. CA2004-11-016,2005-Ohio-6041.
 {¶ 35} After the move, Trooper Smart observed that appellant's entire body was shaking while the drug dog circled the SUV. The dog sniff was conducted about 11 minutes into the stop, and did not unreasonably extend the stop in view of Trooper Smart's testimony that a typical traffic stop takes 15 to 20 minutes to complete. As stated, the drug dog aggressively alerted at the driver's side of the vehicle, giving Smart probable cause to conduct a search. The cocaine was discovered hidden in the SUV at this time. We find that this evidence supports the conclusion that there were specific and articulable facts giving rise to a reasonable suspicion of criminal activity beyond the reason for the initial stop.
 {¶ 36} Because the overall stop was justified, the trial court did not err in denying appellant's motion to suppress evidence. Appellant's second assignment of error is overruled.
 {¶ 37} Assignment of Error No. 3:
 {¶ 38} "THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION BY ENTERING VERDICTS OF GUILTY, AS THE JURY'S VERDICT WAS AGAINST THE *Page 11 
MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 39} Appellant contends that his conviction was against the manifest weight of the evidence. In view of our disposition of appellant's first assignment of error, his third assignment of error has been rendered moot.
 {¶ 40} The trial court's ruling on appellant's motion to suppress is affirmed. Appellant's conviction for possession of cocaine is reversed, however, and the matter is remanded for further proceedings consistent with this opinion.
 {¶ 41} Judgment affirmed in part, reversed in part, and remanded.
BRESSLER and WALSH, JJ., concur.
[1] The day of trial, the state revealed that the lab tests on the package of cocaine yielded 975.12 grams. R.C. 2925.11(A), (C)(4)(f), under which appellant was originally indicted, is only applicable where the amount of powder cocaine equals or exceeds 1000 grams. Consequently, the state moved to amend the indictment to one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e), also a first-degree felony, and dismissed the major drug offender specification under R.C.2941.1410 as it was no longer applicable.
[2] Wince was originally charged with one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(f), a first-degree felony, carrying a major drug offender specification under R.C.2941.1410. This charge was reduced to one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(b), a fourth-degree felony, and the major drug offender specification was dismissed. *Page 1