OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from an order of the Clermont County Court of Common Pleas granting a motion to suppress in favor of defendant-appellee, Brian Thomas Nieters. For the reasons outlined below, we affirm the decision of the trial court. *Page 2 
 {¶ 2} On the evening of August 31, 2006, appellee left his place of employment and drove to a Hooters parking lot in Union Township to meet two friends, Neil Howell and John Claus. Howell and Claus arrived at the lot approximately five minutes later and parked in a spot next to appellee. Howell and appellee sat in appellee's vehicle for approximately five to eight minutes while Claus stood outside. Thereafter, Howell exited appellee's vehicle and left with Claus. Appellee also left, driving out of the parking lot onto Nine Mile Road.
 {¶ 3} Clermont County Sheriff's Deputy Jeff Gobbi, who was parked in an adjacent lot, followed appellee's vehicle onto Nine Mile Road. Deputy Gobbi initiated a traffic stop shortly after appellee failed to signal before changing lanes to access Interstate 275 North. Deputy Gobbi obtained appellee's license and registration, and asked whether appellee had any drugs or contraband in his vehicle. After responding in the negative, appellee asked why he was pulled over. Deputy Gobbi stated that he believed appellee engaged in a drug deal in the Hooters parking lot. Appellee denied the allegation.
 {¶ 4} Deputy Gobbi had appellee exit his vehicle and conducted a pat-down frisk, which yielded no weapons or contraband. He then placed appellee in his cruiser and made a number of calls attempting to locate a drug-sniffing dog. Approximately 20 to 30 minutes into the stop, appellee informed Deputy Gobbi that he had a small amount of marijuana in a book bag in his vehicle. Deputy Gobbi searched appellee's vehicle and found the marijuana, a pipe, and a grinder in the book bag. He returned to his cruiser and told appellee he believed there were more drugs in the vehicle.
 {¶ 5} Sergeant James Frodge, a Union Township police officer who had responded to the scene, conducted a second pat-down search of appellee and placed him back in Deputy Gobbi's cruiser in handcuffs. At this time, approximately 45 to 60 minutes into the stop, Deputy Gobbi began writing a traffic citation for the illegal lane change. Deputy Gobbi and Sergeant Frodge then executed a second search of appellee's vehicle, which produced no *Page 3 
narcotics or contraband. When a drug dog finally arrived, it alerted on appellee's vehicle. The officers then located a straw with cocaine residue in the interior console.
 {¶ 6} In February 2007, appellee was indicted on one count of possession of cocaine in violation of R.C. 2925.11(A), a fifth-degree felony. Appellee moved to suppress the fruits of the search. Following a hearing, the trial court granted the motion on the basis that the delayed detention of appellee following the initial stop was unconstitutional under the evidence in the record. The state timely appeals, raising one assignment of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS."
 {¶ 9} The state argues that appellee's motion to suppress should not have been granted because the initial stop was supported by probable cause and the investigatory detention was supported by Deputy Gobbi's reasonable and articulable suspicion that he had witnessed a drug deal.
 {¶ 10} Appellate review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 329, 332. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Bryson (2001), 142 Ohio App.3d 397, 402. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 11} There are two types of traffic stops, each requiring a different constitutional standard. State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, at 4. One is a typical noninvestigatory stop where an officer directly observes a traffic violation, giving rise to probable cause to stop the vehicle. Whren v. United States (1996),517 U.S. 806, 810, 116 S.Ct. 1769. The second is an investigative or"Terry" stop, which occurs where an officer has a reasonable suspicion based upon specific articulable facts that criminal behavior has *Page 4 
occurred or is imminent. Terry v. Ohio (1968), 392 U.S. 1, 21,88 S.Ct. 1868.
 {¶ 12} The difficulty in assessing the constitutionality of the traffic stop in this case arises out of the fact that Deputy Gobbi was on medical leave and did not appear at the hearing on the suppression motion.[1] As a result, the record does not properly establish Deputy Gobbi's bases for detaining appellee. There is absolutely no evidence of Deputy Gobbi's direct observations of appellee in the Hooters parking lot or thereafter. We are also left uninformed of Deputy Gobbi's past experience under similar circumstances to help explain his actions in the present matter. In sum, the record does not adequately demonstrate how Deputy Gobbi's observations gave rise to a reasonable suspicion that appellee was engaged in criminal activity in order to justify the prolonged stop.
 {¶ 13} The majority of the facts in the record were gathered from appellee's testimony. In its reply brief, the state admits that "[t]his appeal is unusual because the facts below came from Nieters' own testimony." Accordingly, the state heavily relies upon appellee's testimony to support Deputy Gobbi's actions. It is true that hearsay is admissible at suppression hearings. State v. King, Hamilton App. No. C-010778, 2003-Ohio-1541, ¶ 27. However, appellee's testimony merely conveyed his own observations and the statements made to him by Deputy Gobbi. Such testimony provided appellee's perspective only. Appellee's testimony did not and could not possibly convey Deputy Gobbi's state of mind or elucidate the facts upon which Deputy Gobbi acted. Nowhere in the record is there any reliable representation of Deputy Gobbi's observations or perceptions during the incident.
 {¶ 14} We recognize that courts must examine the totality of the circumstances in deciphering the existence or absence of reasonable articulable suspicion. State v. Batchili, *Page 5 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 17. Nonetheless, this does not permit us to speculate as to what Deputy Gobbi saw and how his observations and experience may have factored into the delayed detention of appellee. Cf. State v. Dumas, Fairfield App. No. 02CA60, 2003-Ohio-4117, ¶ 28; State v. Brooks (1998), Greene App. No. 97-CA-9,1998 WL 165013, at *2.
 {¶ 15} The fact that appellee and Howell were engaged in conversation in appellee's vehicle for a few minutes, in and of itself, was not enough to justify appellee's prolonged detention. State v. Crosby
(1991), 72 Ohio App.3d 148, 151. It is conceivable that appellee engaged in a drug deal in the Hooters parking lot. Id. at 152. However, appellee's innocent explanation for the meeting — that he met with friends after leaving work to make plans to attend a memorial event at a local bar later that evening — was equally conceivable. Id.
 {¶ 16} In order to be reasonable, Deputy Gobbi's belief that appellee engaged in a drug deal had to be based less upon an "inchoate and unparticularized suspicion or `hunch'" and more upon reasonable inferences in light of his experience. Terry, 392 U.S. at 27. As this court previously explained:
 {¶ 17} "An investigatory stop is constitutionally justifiable within the parameters of the Fourth Amendment when a police officer is able topoint to articulable facts that give rise to a reasonable suspicion that an individual is currently engaged in or is about to engage in criminal activity or conduct." State v. Noble, Clermont App. No. CA2001-10-076, 2002-Ohio-3350, ¶ 7, citing Terry at 21. (Emphasis added.)
 {¶ 18} In failing to testify at the suppression hearing, Deputy Gobbi did not articulate the facts which prompted and sustained his suspicion of illegal activity in prolonging the stop. Therefore, while there may have been a lawful basis for Deputy Gobbi's actions, the facts in the record do not permit us to decipher whether his objective justification for the detention was reasonable under the Fourth Amendment.Noble at ¶ 7.
 {¶ 19} We conclude that the state failed to meet its burden to prove that the *Page 6 
warrantless search and seizure was reasonable under the Fourth Amendment. State v. Bevan (1992), 80 Ohio App.3d 126, 129. The state's sole assignment of error is overruled.
 {¶ 20} Judgment affirmed.
WALSH, P.J. and POWELL, J., concur.
[1] The hearing was held on June 19, 2007 and continued to July 13, 2007 and August 6, 2007. Deputy Gobbi was unavailable to testify on all three occasions. The state repeatedly and unsuccessfully attempted to contact Deputy Gobbi in order to have him testify. *Page 1