OPINION
{¶ 1} Defendant-appellant, Harry Smith, appeals his convictions in the Clermont County Court of Common Pleas for illegal assembly or possession of chemicals for the manufacture of drugs, conspiracy to commit illegal manufacture of drugs, and child endangering. Appellant also appeals the trial court's decision denying his motion to suppress evidence obtained during a traffic stop. *Page 2 
 {¶ 2} On August 1, 2006, appellant was seen with his 15-year-old son at the Eastgate Meijer in Clermont County. Kimberly Ferguson, one of the store's loss prevention employees, noticed appellant in the drug aisle of the store. According to Ferguson, appellant was acting "suspiciously" while examining boxes of cold medications. Ferguson then observed appellant and his girlfriend separately purchase pseudoephedrine products, meet in the parking lot, and leave in the same vehicle. Ferguson's observations aroused her suspicions and led her to contact Agent Marc Sorbello of the Clermont County Narcotics Unit.
 {¶ 3} Sorbello issued a radio broadcast to police officers to be on the lookout ("BOLO") for appellant's vehicle. Deputy James Kirker of the Clermont County Sheriff's Office was on patrol duty when he received notice of the BOLO alert. The deputy positioned his cruiser on State Route 32 at an angle allowing him to view oncoming eastbound traffic. Shortly after, the deputy observed appellant's vehicle approach his position and noticed a large spider crack near the center of appellant's windshield. Deputy Kirker pulled appellant over. In the vehicle were appellant, his girlfriend, and his 15-year-old son. After approaching the vehicle, the deputy learned that both appellant's and his girlfriend's licenses had been suspended. Because there was no licensed driver capable of moving the vehicle from the highway, the deputy initiated impoundment procedures and arrested appellant for driving with a suspended license. A subsequent inventory search of appellant's vehicle yielded 18 boxes of pseudoephedrine products, a respirator, a cook pot, a glass jar, rubber gloves, and various receipts for purchases of pseudoephedrine products.
 {¶ 4} On September 27, 2006, appellant was indicted on three counts. In count one of the indictment, appellant was charged with illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A). Count one also contained language indicating that appellant had previously been convicted of two felony drug offenses. Counts two and three charged appellant with conspiracy to commit illegal manufacture of *Page 3 
drugs in violation of R.C. 2923.01(A)(2) and 2925.04(A), and child endangering in violation of R.C. 2919.22(B)(6). Appellant filed a motion to suppress, which was denied by the trial court. On April 19, 2007, a jury returned a guilty verdict on all charges. Appellant was subsequently sentenced to a total of ten years in prison.
 {¶ 5} Appellant timely appeals, raising three assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN, OVER OBJECTION, THE JURORS WERE REPEATEDLY INFORMED OF, AND PRESENTED WITH EVIDENCE REGARDING HIS PRIOR CONVICTIONS, AND WERE ASKED TO MAKE A PURELY GRATUITOUS DETERMINATION THAT HE IN FACT HAD PRIOR CONVICTIONS."
 {¶ 8} In his first assignment of error, appellant asserts it was prejudicial error for the trial court to allow the introduction of his prior convictions into evidence at every stage of the proceedings, from indictment, through voir dire and trial, and in the verdict forms.
 {¶ 9} The record shows that appellant's indictment explicitly referred to his prior convictions in 2002 for illegal manufacture of drugs and for illegal assembly or possession of chemicals for the manufacture of drugs. At trial, certified copies of the judgment entries of appellant's prior convictions were entered into evidence. In addition, the verdict form for count one contained the following language: "[w]e, the jury, further find that the Defendant was previously convicted of Illegal Manufacture of Drugs * * * on July 15, 2002 * * * and Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs * * * on August 29, 2002 in the Highland County Court of Common Pleas, Hillsboro, Ohio."
 {¶ 10} Prior to trial, appellant made a motion in limine to exclude evidence of the prior convictions, which was denied. Appellant renewed his motion on the first day of trial, and subsequently throughout the trial, objected to the inclusion of his prior convictions as an *Page 4 
element of count one and in the verdict forms. The trial judge overruled all of appellant's objections, specifically stating that the prior convictions would be considered as an element of count one and would be entered into evidence in accordance with his previous ruling on the motion in limine. At the close of the trial, the judge instructed the jurors that if they found appellant guilty on count one, they must also find beyond a reasonable doubt that appellant was previously convicted of illegal manufacturing of drugs.
 {¶ 11} In State v. Allen (1987), 29 Ohio St.3d 53, the Ohio Supreme Court held that where the existence of a prior conviction enhances the penalty for a subsequent offense, but does not elevate the degree thereof, the prior conviction is not an essential element of the subsequent offense, but is strictly a sentencing consideration for the court, and does not need to be alleged in the indictment or proved as a matter of fact. Id. at 55. The supreme court noted that "[t]he existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand." Id.
 {¶ 12} In the case at bar, appellant's prior convictions do not constitute an element or specification of any of the offenses for which he was indicted and convicted in 2007. Rather, appellant's convictions were merely a penalty enhancement for sentencing purposes, which was not at issue here. Because we can find no reason to justify the introduction of such prejudicial evidence at the trial, we find that appellant's right to a fair trial has been violated. For the foregoing reasons, appellant's first assignment of error is sustained.
 {¶ 13} Assignment of Error No. 2:
 {¶ 14} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S SUPPRESSION MOTION, AS THERE WAS NO PROBABLE CAUSE TO BELIEVE THAT HE HAD COMMITTED A CRIME, NOR WAS THERE A VALID PRETEXTUAL REASON FOR *Page 5 
THE TRAFFIC STOP THAT LEAD TO HIS ARREST"
 {¶ 15} In his second assignment of error, appellant argues that the trial court erred by denying his motion to suppress.
 {¶ 16} Appellate review of a suppression motion is a mixed question of law and fact. State v. Nieters, Clermont App. No. CA2007-09-099,2008-Ohio-3727, ¶ 10. "The reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence." Id., citing State v. Bryson (2001), 142 Ohio App.3d 397, 402. The appellate court must then determine as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 17} It is well-established that "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment of the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Dayton v. Erickson,76 Ohio St.3d 3, 1996-Ohio-431, syllabus.
 {¶ 18} R.C. 4513.02(A) prohibits anyone driving "any vehicle * * * which is in such unsafe condition as to endanger any person." Ohio Adm. Code 501:2-1-11 states: "Every motor vehicle shall be equipped with safety glass as required in [R.C] 4513.26: Such glass shall be free of discoloration or diffusion, cracks, and unauthorized obstructions * * *."
 {¶ 19} Ohio appellate courts disagree as to whether a crack in the windshield of a vehicle justifies a stop under R.C. 4513.02(A). Where the crack is small and poses no threat to personal safety, some courts have found that it does not justify a traffic stop. See, e.g., State v.Wilhelmy (May 17, 2000), Hamilton App. No. C-990730 (police officer, who was not a state trooper, did not have reasonable suspicion to stop a vehicle whose windshield was cracked absent any evidence that the crack posed a threat to personal safety); State v. *Page 6 Glinsey (Aug. 20, 1999), Williams App. Nos. WM-98-026 and WM-98-028. By contrast, where the crack is substantial, could impair, or impairs the driver's vision, other courts have found a stop justified. See, e.g.,State v. Repp, Knox App. No. 01-CA-11, 2001-Ohio-7034 (a one to two-foot long crack across the middle of the windshield sufficient to create a reasonable suspicion to stop the vehicle as unsafe under R.C. 4513.02[A]); State v. Heiney, Portage App. No. 2000-P-0081, 2001-Ohio-4287 (finding a one-foot long spider crack in the middle of the windshield "substantial" and providing reasonable suspicion to stop the vehicle as unsafe under R.C. 4513.02).
 {¶ 20} In the case at bar, Deputy Kirker testified that as appellant's vehicle was approaching the deputy's position, the deputy noticed a sizable spider crack "just about center of the windshield, toward the passenger side." The spider crack was one and one-half foot to two feet long and was "10, 12 inches" wide. Believing that the crack presented safety concerns for the occupants of the vehicle as well as other drivers by obscuring the driver's vision, and based upon the issuance of the BOLO, the deputy pulled appellant over. Appellant later received a citation for the cracked windshield. In support of the deputy's testimony, the state introduced two photographs, one depicting the windshield and showing the spider crack, and one facing the front of the vehicle and depicting the vehicle. The latter does not show the crack. However, Deputy Kirker testified that because of the sun shining that day, there was a glare obscuring the crack on the windshield.
 {¶ 21} After reviewing the deputy's testimony and the photographs, the trial court overruled appellant's motion to suppress, stating: "the Court believes that Deputy Kirker could have readily observed the spider crack in the Pontiac's windshield as the vehicle approached his position. The Court also considers his stated concerns regarding the likelihood of impaired safety and visibility resulting from the sizable crack both credible and reasonable under the circumstances. Therefore, the Court holds that Deputy Kirker had the reasonable *Page 7 
suspicion necessary to justify his stop of Defendant's vehicle pursuant to R.C. 4513.02(A)."
 {¶ 22} Upon reviewing Deputy Kirker's testimony and the photograph which shows a long, vertical, and several inches wide crack located toward the center of the windshield, we find that Deputy Kirker had probable cause to stop appellant's vehicle under R.C. 4513.02(A). The trial court, therefore, properly denied appellant's motion to suppress. Appellant's second assignment of error is overruled.
 {¶ 23} Assignment of Error No. 3:
 {¶ 24} "THERE WAS INSUFFICIENT EVIDENCE FOR A REASONABLE FINDER OF FACT TO DETERMINE THAT APPELLANT CONSPIRED TO COMMIT ILLEGAL MANUFACTURE OF DRUGS."
 {¶ 25} As a result of our disposition under appellant's first assignment of error, the third assignment of error is moot.
 {¶ 26} The trial court's judgment overruling appellant's motion to suppress is affirmed. However, based upon our disposition under appellant's first assignment of error, his convictions are reversed and this matter is remanded to the trial court for a new trial consistent with this opinion and in accordance with the law of this state.
 WALSH, P.J. and BRESSLER, J., concur. *Page 1