OPINION
{¶ 1} Defendant-appellant, Pamela Henry, appeals the Preble County Court of Common Pleas decision denying her motion to suppress. We affirm the decision of the trial court.
 {¶ 2} On January 26, 2007, Timothy Johnson was reported missing by Jeannie Heltsley, his aunt, who also reported that her nephew was last seen with appellant, his sister, six days earlier. On February 13, 2007, Lloyd Hunt, Johnson's uncle, met with police to *Page 2 
report appellant and her boyfriend, Adam Scott, were driving Johnson's van without proper insurance or permission. The next day, after Scott was asked to bring Johnson's van to the police station, appellant and her boyfriend drove the van to the police station where they met with Chief Deputy Terry Snowden and Detective Dean Miller. After a brief conversation, Deputy Snowden asked appellant if he could speak with her about her brother's disappearance, to which she agreed. After Deputy Snowden's questioning concluded, appellant then agreed to take a Computerized Voice Stress Analysis (CVSA) test.
 {¶ 3} During her CVSA test, appellant denied having any information regarding her brother's disappearance, a statement which the test indicated was false. After her test concluded, appellant agreed to wait in an adjoining room while her boyfriend also took a CVSA test. During his CVSA test, Scott told police that appellant told him she killed her brother and hid his body in a barrel. Once Scott's test concluded, the police approached appellant while she waited in the adjoining room and informed her that she failed her CVSA test. In response, appellant "blurted out" that she killed her brother and that Scott had "nothing to do with it." Appellant was then taken back into the CVSA testing room where, after being advised of her Miranda rights, she confessed to killing her brother and concealing his body in a barrel.
 {¶ 4} Appellant moved to suppress the statements she made to the police. Following a suppression hearing, the trial court denied appellant's motion to suppress. A Preble County jury found appellant guilty of murder and she was sentenced to a minimum of 25 years in prison.
 {¶ 5} Appellant now appeals the trial court's decision denying her motion to suppress, raising two assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT PREJUDICIALLY ERRED IN NOT SUPPRESSING THE *Page 3 
DEFENDANT-APPELLANT'S CONFESSION UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 8} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact, and therefore, is in the best position to resolve factual questions and evaluate witness credibility. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Bryson (2001), 142 Ohio App.3d 397, 402. The appellate court then determines, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 9} We note at the outset that the two issues of voluntariness of a confession and compliance with Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602, are analytically separate inquiries. State v. Fille, Clermont App. No. CA2001-08-06, 2002-Ohio3879, ¶ 15 citing, State v.Chase (1978), 55 Ohio St.2d 237. A confession may be involuntary whenMiranda warnings are given, or when Miranda warnings are not required, a confession may be involuntary, based on the totality of the circumstances, if the defendant's will was overcome by the circumstances surrounding the giving of the confession. Fille at ¶ 15, citingDickerson v. United States (2000), 530 U.S. 428, 120 S.Ct. 2326.
 Compliance with Miranda {¶ 10} Initially, appellant claims that the trial court erred when it found she was not in custody before she confessed to murdering her brother, and therefore, the statements she made to the police were inadmissible because she was not advised of her Miranda rights.
 {¶ 11} It is well-established that the "prosecution may not use statements, whether *Page 4 
exculpatory or inculpatory, stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." State v. Huysman, Warren App. No. CA2005-09-107, 2006-Ohio-2245, ¶ 13, quotingMiranda, 384 U.S. at 444. The warnings outlined in Miranda are only required when there has been such a restriction on the person's freedom as to render her in custody. Id., citing Oregon v. Mathiason (1977),429 U.S. 492, 494, 97 S.Ct. 711.
 {¶ 12} In determining whether an individual was in custody, a court must examine the totality of the circumstances surrounding the interrogation. State v. Coleman, Butler App. No. CA2001-10-241, 2002-Ohio-2068, ¶ 23. "[T]he ultimate inquiry is simply whether there [was] a `formal restraint or restraint on freedom of movement' of the degree associated with a formal arrest." Huysman at ¶ 15, quotingCalifornia v. Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517. In turn, a person is in custody if she is formally placed under arrest prior to a police interrogation, or, if not formally arrested, when there is a significant restraint on her freedom of movement.Huysman at ¶ 15, citing State v. Staley (May 8, 2000), Madison App. No. CA99-08-019, at 7.
 {¶ 13} Further, a noncustodial situation is not converted into a custodial situation simply because questioning takes place in a police station. Fille, 2002-Ohio-3879 at ¶ 18, citing Mathiason,429 U.S. at 495. Rather, the initial determination of whether an individual is in custody, for purposes of Miranda, depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. Huysman at ¶ 16;Stansbury v. California (1994), 511 U.S. 318, 323-324, 114 S.Ct. 1526.
 {¶ 14} The testimony presented at the suppression hearing indicated the following:
 {¶ 15} On February 14, 2007, at approximately 5:00 p.m., after being asked to bring Johnson's van to the police station, appellant and her boyfriend drove the van to the police *Page 5 
department where they met with Deputy Snowden and Detective Miller in the squad room.[1] After a brief conversation, appellant agreed to speak with Deputy Snowden about her brother's disappearance and also agreed to take a CVSA test with Investigator David Lindloff.[2]
Appellant was then taken to Investigator Lindloff's office where she remained for approximately 50 minutes during the administration of the CVSA test. Although the door to Investigator Lindloff's office remained closed, appellant was not arrested or placed in handcuffs during the administration of the test.
 {¶ 16} After she completed her CVSA test, in which she denied having any information regarding her brother's disappearance, a statement the test indicated as false, appellant agreed to wait in an adjoining room while her boyfriend also took a CVSA test. During his CVSA test, Scott told police that appellant admitted to killing her brother and hiding his body in a barrel. After Scott's test concluded, Investigator Lindloff approached appellant and told her that she failed her CVSA test. In response, appellant "blurted out" a confession to her brother's murder by stating; "I killed him. [Scott] didn't have nothing to do with it." Appellant was then taken back into Investigator Lindloff's office where she again confessed to killing her brother after being advised of her Miranda rights.
 {¶ 17} The trial court, in denying appellant's motion to suppress, determined that appellant was never handcuffed and free to leave at anytime before she confessed to killing her brother. As a result, the trial court concluded that appellant was not in custody and not deprived of her freedom in any significant way prior to her initial confession. Based on our review of the record, we find that there is competent, credible evidence to support the trial court's finding. Therefore, because appellant was not in custody before she confessed to the *Page 6 
murder, a recitation of her Miranda warnings was not required.Fille at ¶ 21.
 Voluntariness of Confession {¶ 18} Next, appellant argues that the trial court erred in denying her motion to suppress because she was "induced to confess" making her confession involuntary and inadmissible.
 {¶ 19} Although we find that Miranda warnings were not required, appellant's confession must have been voluntarily made to be admissible.Fille at ¶ 22, citing Bram v. United States (1897), 168 U.S. 532, 542,18 S.Ct. 183. The voluntariness of a confession is a question of law that an appellate court reviews de novo. See State v. Greeno, Seneca App. No. 13-02-46, 2003-Ohio-3687.
 {¶ 20} Coercive police activity that overbears the defendant's will or impairs his self-determination is a necessary predicate to finding that a confession was involuntary. Fille at ¶ 22, citing State v. Dailey
(1990), 53 Ohio St.3d 88, 91-92. In deciding whether a defendant's confession was involuntary, "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Huysman, 2006-Ohio-2245
at ¶ 21, quoting State v. Bays, 87 Ohio St.3d 15, 22, 1999-Ohio-216. Evidence of "coercive police activity" during a custodial interrogation is necessary before finding a confession was involuntarily given.Huysman at ¶ 21, citing State v. Cooey (1989), 46 Ohio St.3d 20, 28.
 {¶ 21} In this case, there is no evidence to indicate appellant was physically threatened, harmed, deprived of food, medical treatment, or sleep. The interviews were conducted at a time and day convenient for appellant after she was driven to the police station by her boyfriend. Moreover, as noted above, appellant was not even subjected to a custodial interrogation before she confessed to killing her brother. Instead, appellant simply *Page 7 
"blurted out" that she killed her brother after being told she failed a CVSA test. Further, the trial court found that there was "no evidence * * * that [appellant's] will was overborne by coercion, threats or promises" even after she was placed in custody. As a result, based on the totality of the circumstances, we find appellant's confession was not involuntarily obtained.
 {¶ 22} Accordingly, the trial court did not err in denying appellant's motion to suppress because she was not in custody and her confession was voluntarily given. Therefore, appellant's first assignment of error is overruled.
 {¶ 23} Assignment of Error No. 2:
 {¶ 24} "THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 25} To demonstrate ineffective assistance of counsel, a defendant must establish that her counsel's representation fell below an objective standard of reasonableness, and that she was prejudiced from counsel's deficient performance. Strickland v. Washington (1984), 466 U.S. 668,687-691, 104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,141-143. "Reversal of a conviction for ineffective assistance of counsel `requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by theSixth Amendment.'" State v. Hand, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 199, quoting Strickland at 687. In addition, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."Strickland at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
 {¶ 26} Appellant argues that if the motion to suppress should have been granted then *Page 8 
her trial counsel waived the error by failing to object to the admission of her confession at trial, thus resulting in ineffective assistance of counsel.
 {¶ 27} Crim. R. 12(C), which addresses pretrial motions, provides:
 {¶ 28} "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial: * * *
 {¶ 29} "(3) Motions to suppress evidence * * * on the ground that it was illegally obtained."
 {¶ 30} A motion to suppress determines with finality the admissibility of evidence. State v. Smith (Nov. 8, 2000), Lorain App. No. 99CA007399,2000 WL 1675052 at *10, citing State v. French, 72 Ohio St.3d 446, 449,1995-Ohio-32. In turn, there is no need to renew the objection to the admission of the evidence at trial once the trial court denies the motion.[3] Id. As a result, appellant's trial counsel was not ineffective for failing to re-object to the admission of her confession when there was no reasonable basis for success. See Smith,2000 WL 1675052 at *10. Further, because we found the trial court did not err in overruling her motion to suppress, it necessarily follows trial counsel was not ineffective for failing to re-object at trial to that same evidence. See State v. Lawson, Licking App. No. 08-CA-52, 2009-Ohio-115. Accordingly, appellant's second assignment of error is overruled.
 {¶ 31} Judgment affirmed.
WALSH, P.J., and BRESSLER, J., concur.
[1] The squad room is a communal room containing cubicles and tables where the road Deputies complete paperwork.
[2] According to Deputy Snowden, appellant would have been free to leave and would have been taken home if she had declined to take the CVSA test.
[3] We note that preserving for appeal the motion to suppress is different than preserving for appeal the denial of a motion inlimine, which is a tentative, interlocutory order. Smith,2000 WL 1675052 at *10, fn. 2, citing State v. Grubb (1986), 28 Ohio St.3d 199,201. In order to preserve for appeal the denial of a motion inlimine, the opposing party must proffer the temporarily prohibited evidence to enable the court to make a final determination on its admissibility and to preserve any objection on the record for appeal.Smith, citing Grubb at 202. *Page 1