[Cite as *Parma v. Kannenberg*, 2014-Ohio-5681.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100370**

**CITY OF PARMA**

PLAINTIFF-APPELLEE

vs.

**CARLEEN M. KANNENBERG**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Parma Municipal Court
Case Nos. 12-CRB-03175, 12-CRB-03215,
12-CRB-03457, and 12-CRB-04794

**BEFORE:** Celebrezze, P.J., Keough, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** December 24, 2014

**ATTORNEY FOR APPELLANT**

Paul A. Daher
Paul A. Daher & Associates
700 W. St. Clair Avenue
Suite 218
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy G. Dobeck
Parma Law Director
6611 Ridge Road
Parma, Ohio   44129

Richard A. Neff
Assistant Prosecuting Attorney
City of Parma
Law Department
5555 Powers Boulevard
Parma, Ohio   44129

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant Carleen M. Kannenberg appeals her convictions in the Parma Municipal Court for disorderly conduct, trespassing, open burning, and violation of a temporary protection order that resulted from a dispute with a neighbor. She argues that her convictions are unsupported by sufficient evidence and are against the manifest weight of the evidence. After a thorough review of the record and law, we affirm.

## I. Factual and Procedural History

{¶2} Gary and Kim Geyer lived at a home on Pleasant Valley Road in Parma, Ohio, for 22 years. In late 2011, appellant moved into a home next door. Problems arose between the Geyers and appellant in the early summer of 2012. Ongoing issues resulted in a number of criminal citations over the next year.

{¶3} The Geyers, concerned about the behavior they witnessed, sought an ex parte temporary protection order ("TPO") by filing a motion with the Cuyahoga County Common Pleas Court. That request was granted on June 21, 2012. A hearing was scheduled on the motion for July 2, 2012. Service of the order was not accomplished on appellant until June 26, 2012.

{¶4} On June 23, 2012, Kim Geyer called the police with a noise complaint at approximately 6:45 a.m. A Parma police officer responded, arrested appellant, and issued a citation for disorderly conduct at 7:16 a.m. Appellant posted bond and was released. The case was prosecuted as Parma M.C. No. 12-CRB-03175.

{¶5} On June 26, 2012, Kim Geyer requested Parma police to respond three times. The first incident resulted in appellant being cited for disturbing the peace at 1:08 p.m. At that time, the officer served appellant with an official copy of the ex parte TPO obtained by the Geyers. The police issued a second citation for criminal trespass in violation of a protection order at 2:05

p.m. The third time the police responded, no citation was issued, but appellant was transported to the hospital for evaluation. These citations were prosecuted under Parma M.C. No. 12-CRB-03215.

{¶6} On July 5, 2012, Parma police again responded to a complaint from Kim Geyer. At 11:01 p.m., appellant was arrested and issued a citation for disorderly conduct while intoxicated. She was also issued a citation for open burning after the fire department put out a fire in a fire pit in her backyard twice. This case was prosecuted under Parma M.C. No. 12-CRB-03457.

{¶7} A criminal complaint was filed in the Parma Municipal Court on September 14, 2012, charging appellant with violating a protection order. It was assigned Parma M.C. No. 12-CRB-04794.

{¶8} On March 11, 2013, appellant's behavior resulted in another citation for violating a temporary restraining order. This was assigned Parma M.C. 13-CRB-01256.[1] All cases were consolidated for trial.

{¶9} A bench trial commenced on June 5, 2013. Kim Geyer testified first for the city of Parma (the "City"). She testified that she grew up in the house she now lives in with her husband. They bought the house 22 years ago from Kim's parents. She testified that problems began in the early summer of 2012 between her and her neighbor, appellant. She described appellant's behavior as bizarre and threatening. This included loud music and screaming threats, cursing, and doing things purposefully to annoy them. Kim testified that, as a result, she and her husband Gary sought and obtained a TPO, initially ex parte, on June 21, 2012, and then after a hearing on July 2, 2012.

---

[1] Appellant was found not guilty of this charge and this case is not part of the present appeal.

{¶10} Kim testified that on June 23, 2012, appellant was in her backyard in the early morning playing loud music and shouting obscenities. She was arrested and cited for disorderly conduct by Parma police officer Mike Yonek. He testified to hearing loud music and appellant screaming obscenities on arrival.

{¶11} Kim also called the police complaining of loud noise on June 26, 2012. She testified that appellant was playing loud music and shouting obscenities in the late morning. Parma police officer James Manzo responded. He testified that, upon arrival, he heard loud music from down the street and heard appellant shouting obscenities. He issued a citation for disturbing the peace.

{¶12} Kim testified that she had to call the police again a little while later that same day because appellant was in the Geyer's yard staring menacingly in front of the Geyer's large picture window at the front of their house and tossing an object up and down as if threatening to throw it through the window. Officer Manzo responded and reviewed video surveillance footage from the Geyer's home security system that documented this behavior. He issued appellant a citation for trespassing and hand delivered a copy of the temporary protection order. He advised appellant to stay off the Geyer's property.

{¶13} Kim further testified that appellant's behavior was disturbing and resulted in yet another call to the police for help that day. According to her, appellant was then transported to the hospital for evaluation. Parma police officer Thomas J. Kugler also testified to appellant's strange behavior and that she was transported to the hospital.

{¶14} Kim next testified about a July 5, 2012 incident when appellant was having a small party. Appellant had lit a fire in a fire pit that was of concern to Kim due to a previous out-of-control fire originating from the same place. This previous fire had burned out of control

and burned items on Kim's property, including trees and grass and damaged her house. Police and fire personnel responded. The fire department extinguished the fire, and the responding officer issued a warning to appellant about open burning. Within a few minutes of the officers leaving, appellant restarted the fire. Kim again called to report it. The fire department again extinguished the fire, and appellant was cited for open burning. She was then arrested for disorderly conduct while voluntarily intoxicated by responding officer Robert Curtin. He testified that appellant would not calm down after he issued the citation and continued to shout obscenities at him after warning her to stop.

{¶15} Kim testified that after this, appellant was quiet until September 13, 2012. On that day, appellant was out in her yard playing loud music and shouting obscenities at the Geyers. After the police observed video and audio evidence of appellant yelling at the Geyers and making rude gestures at them, Officer Kugler issued a citation for violating a TPO.

{¶16} According to Kim, even this citation did not end the behavior. She testified that appellant would park her car in her driveway next to the Geyer's home so that she could see directly into the Geyer's living room. Appellant would then sit in the car and stare at them. This behavior and video recordings of appellant stepping on the Geyer's property prompted the Parma police to issue an additional citation for violating a temporary protection order in March 2013. Parma police officer Eric Dougan testified that he responded to calls from Kim and reviewed surveillance video time-stamped March 7 and March 11, 2013, which documented the behavior. He issued a citation for violation of the TPO.

{¶17} Gary Geyer and friends of the Geyers, Terry Hess and Renee Gahan, also testified to observing the odd behavior of appellant and hearing threats appellant uttered.

**{¶18}** At the close of the City's case, the trial court granted appellant's Crim.R. 29 motion in part. The judge found that the City had not demonstrated that appellant was intoxicated during the July 5, 2012 incident that resulted in a citation for disorderly conduct while voluntarily intoxicated. The court denied the motion as to the other charges.

**{¶19}** Appellant called several witnesses in her defense. First, Terry Rhodes testified that he grew up next door to Kim Geyer in the house currently occupied by appellant. He stated that he bought the house from his siblings after their parents died. He rented the house to John Sworchek, and appellant lives in the house with John. Rhodes also testified that his girlfriend, Cheryl Kilbane, has a daughter that is married to Keith Geyer, the Geyer's son, and that they are currently going through a divorce.

**{¶20}** Missy Toth, Rhodes's half-sister, also testified on behalf of appellant. She testified that she paid a visit to the house occupied by appellant on June 26, 2012, and observed the odd behavior of appellant that resulted in appellant being transported to the hospital. She also testified that she realized this is the type of behavior that Kim had to put up with every day.

**{¶21}** Finally, appellant testified. She stated that the Geyers were always calling the police on her for nothing and that Kim hated Terry Rhodes and that is why all of this happened. She explained that she was never cursing at the Geyer's, but that she was on her phone in her backyard exchanging hostile words with her ex-husband.

**{¶22}** The judge took the matter under consideration and set forth the verdicts on the record on June 17, 2013. The court found appellant guilty of all remaining counts except the

March 2013 violation of a TPO. However, the journal entries that resulted from each case did not accurately reflect what occurred — some indicated appellant pled guilty.[2]

{¶23} The trial court sentenced appellant on July 24, 2013. In 12-CRB-03794, she was sentenced to 30 days in jail with 27 days suspended and credit for three days; subpoena costs suspended; fined $250 with $175 in costs suspended; and three years of probation. Appellant received a $10 fine for open burning in 12-CRB-03457, with court costs suspended. In 12-CRB-3175, appellant received a 30-day jail term with 27 days suspended and credit for three days; $250 in costs with $175 suspended. In 12-CRB-03215, for criminal trespass and disturbing the peace, she received a 10-day jail term with 10 days suspended as well as three-years probation. She was fined $250 with $200 suspended as well as subpoena costs suspended. For disturbing the peace, she was fined $20 in costs.

{¶24} For violating a TPO in 12-CRB-04794, she received a 180-day jail sentence with 90 days suspended and 90 days deferred pending a mental health evaluation. A fine of $1,000 was also imposed with $900 suspended, and three years of probation.[3] Appellant then filed the instant appeal raising two assignments of error.

I. The evidence is insufficient to sustain Appellant's convictions.

II. Appellant's convictions are against the manifest weight of the evidence.

## II. Law and Analysis

### A. Sufficiency

---

[2] Some journal entries still indicate that appellant pled guilty even after this court remanded the cases twice for correction, but appellant is not raising any argument about the accuracy of the entries.

[3] The journal entries in these cases are confusing, wrong, and contradictory. The entries in some cases indicate that appellant pled guilty to charges when, in fact, she was found guilty after a bench trial. One entry indicates that a sentence of 90 days was deferred until a certain date. In order to be a final order, this court interprets this order to mean that, on that date, appellant was to serve her jail term even though this may not be the trial court's intention, as expressed in the transcript.

**{¶25}** Appellant first claims her convictions are unsupported by sufficient evidence.

**{¶26}** When reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The evidence must be examined in a light most favorable to the state.

**{¶27}** Appellant was convicted of disturbing the peace, disorderly conduct, criminal trespass, open burning, and violating a protection order.

**{¶28}** Disorderly conduct is defined under Parma Codified Ordinance ("P.C.O.") 648.04(a), in pertinent part as follows: "No person shall recklessly cause inconvenience, annoyance or alarm to another, by * * * (2) Making unreasonable noise or offensively coarse utterance, gesture or display, or communicating unwarranted and grossly abusive language to any person * * *."

**{¶29}** Appellant argues "the facts do not support disorderly conduct" because she "was outside yelling obscenities and singing in her backyard" where she was "merely exercising her First Amendment Right and was not harming the Geyers * * *."

**{¶30}** Disorderly conduct proscriptions can have the undesired effect of chilling constitutionally protected speech. Therefore, the Ohio Supreme Court set forth a required analysis when interpreting whether certain speech violates a disorderly conduct statute or ordinance. *State v. Hoffman*, 57 Ohio St.2d 129, 387 N.E.2d 239 (1979), paragraph one of the syllabus ("A person may not be punished [for disorderly conduct] * * * for 'recklessly caus[ing] inconvenience, annoyance, or alarm to another,' by making an 'offensively coarse utterance' or

'communicating unwarranted and grossly abusive language to any person,' unless the words spoken are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace"). However, this applies only where the subject of the speech has prompted governmental sanction, not the manner of speech. *Fairborn v. Grills*, 2d Dist. Greene No. 92 CA 92, 1994 Ohio App. LEXIS 2467 (June 8, 1994).

> [W]hen the disorderly conduct statute, or the identical * * * City Ordinance, is being enforced as to the content of the defendant's language, the trial court must apply a First Amendment analysis to ensure that the defendant's right to free speech is not being infringed. However, this analysis is not necessary when the defendant is charged with disorderly conduct based solely upon the manner of his speech.
>
> * * *
>
> Where there is no evidence that the content of the defendant's speech was restricted by the enforcement of the disorderly conduct ordinance regulating unreasonable noise, the First Amendment analysis for content restrictions on speech is unnecessary, and the use of fighting words is not an element of the offense. Accordingly, Fairborn is permitted to stop people from yelling incessantly and thereby disturbing the peace in a residential area.

*Id.* at *5. *See also Warrensville Hts. v. Brown*, 8th Dist. Cuyahoga No. 89346, 2008-Ohio-126, ¶ 12; *State v. Cunningham*, 10th Dist. Franklin No. 06AP-145, 2006-Ohio-6373, ¶ 22.

**{¶31}** Here, appellant was convicted of disorderly conduct on June 23, 2012, for making unreasonable noise at approximately 7:00 a.m. by playing loud music and screaming. The police officer testified that he issued the citation when he observed appellant playing loud music and shouting obscenities early in the morning in a residential neighborhood. The content of her speech, while offensive to neighbors, is immaterial to the issuance of the citation in this case. It was the manner of speech — excessive and unreasonable noise early in the morning — that prompted the citation.

**{¶32}** Appellant was convicted of disturbing the peace on June 26, 2012. Disturbing the peace is defined in P.C.O. 648.05(a):

> No person shall disturb the good order and quiet of the Municipality by clamors or noises, by intoxication, drunkenness, fighting, quarreling, wrangling, committing assault, assault and battery, using obscene or profane language in the streets and other public places to the annoyance of the citizens, or otherwise violate the public peace by indecent and disorderly conduct, or by lewd and lascivious behavior.

**{¶33}** Appellant claims that her actions of playing excessively loud music and shouting obscenities are not the kinds of actions punishable under the ordinance. "The offense of 'disturbing the peace' has been understood, from its common law origin up to the present, to include a wide variety of conduct which destroys or threatens public order and tranquility." *State v. Cole*, 7th Dist. Mahoning No. 01 CA 73, 2002-Ohio-5191, ¶ 20, citing *United States v. Woodard*, 376 F.2d 136, 141 (7th Cir.1967). To determine whether some conduct breaches this standard, courts look to what would be disturbing to a reasonable person viewing the surrounding facts and circumstances. *Id*.

**{¶34}** Kim Geyer testified she heard extremely loud music that was coming from appellant's backyard and that she could clearly make out the words being sung from inside her home with the windows shut. The responding officer testified that he could clearly hear the music from as far away as the main cross-street some distance away. Contrary to appellant's argument, this is the type of behavior meant to be criminalized by the statute.

**{¶35}** Again, appellant argues that she was merely exercising her First Amendment rights by playing music. However, the ordinance at issue here does not limit a person's speech; it limits the manner of that speech — specifically, its volume. Appellant's conduct constituted a

disturbance of the peace where she played music so loud that it could be heard at the end of the block.

{¶36} Appellant was also convicted of criminal trespass for her actions on June 26, 2012. Criminal trespass is defined in P.C.O. 642.12(a)(1) in pertinent part: "No person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another * * *."

{¶37} Appellant argues that there is no evidence of any trespass because the surveillance video viewed by the police when determining whether to issue a citation was not shown at trial and the property boundary was in dispute. Appellant agues that the lack of video evidence requires reversal. This argument ignores the testimony of Kim Geyer. Her testimony establishes that appellant knowingly entered onto the Geyers' property. She testified that appellant was standing in front of a window that overlooked the Geyers' front lawn throwing an object up and down. Kim testified this was clearly on her property. Viewing this evidence in a light favorable to the state, all the elements of criminal trespass were adduced at trial.

{¶38} Appellant was also convicted of open burning from her actions on July 5, 2012. Open burning is defined in pertinent part in P.C.O. 660.46(c): "No person or property owner shall cause or allow open burning in a restricted area except as provided in divisions (b) to (d) of this section or in Ohio R.C. 3704.11."[4] P.C.O. 660.46(a)(1)(I) defines "open burning" as

> the burning of any materials wherein air contaminants resulting from combustion are emitted directly into the ambient air without passing through a stack or chimney. "Open burning" includes the burning of any refuse or salvageable material in any device not subject to or designed specifically to comply with the requirements of O.A.C. 3745-17-09 or 3745-17-10.

---

[4] There are exceptions set forth in P.C.O. 660.46(c)(2) not argued to be relevant here.

{¶39} Appellant claims there is insufficient evidence for this conviction because the police officer who issued the citation did not see the fire. The Parma police officer who issued the citation arrived on the scene after the fire department had extinguished the fire the second time.

{¶40} Again, this ignores the testimony of Kim Geyer. She testified that appellant relit the fire within moments of the fire and police department personnel departing after extinguishing the first fire.

{¶41} Finally, appellant was convicted of violating a protection order. P.C.O. 636.045(c)(1) provides: "No person shall recklessly violate the terms of any of the following: (A) [a] protection order issued or consent agreement approved pursuant to Ohio R.C. 2919.26 or Ohio R.C. 3113.31; (B) [a] protection order issued pursuant to Ohio R.C. 2903.213 or Ohio R.C. 2903.214 * * *."

{¶42} Appellant's claim here again relies on the fact that the police officer who issued the citation did not personally observe any wrongdoing, and the surveillance video viewed by the officer was not produced and played at trial. This ignores the testimony of Kim and Gary Geyer, who both testified that appellant, fully aware of the TPO, yelled obscenities and directed rude gestures at the Geyers. Surveillance video of this conduct was duplicative of testimony adduced at trial.

{¶43} The TPO had a no-contact order, which was violated according to the testimony adduced at trial. Therefore, there is sufficient evidence for conviction.

## B. **Manifest Weight**

{¶44} Appellant also claims that her convictions are against the manifest weight of the evidence.

**{¶45}** In reviewing a claim that a verdict is against the manifest weight of the evidence, this court considers the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and, in considering conflicts in the evidence, determines whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In doing so, we remain mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This gives the trier of fact the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins* at 387.

**{¶46}** Reviewing the weight of the evidence produced at trial, the trial court did not lose its way in convicting appellant of the above crimes. Appellant's menacing and disturbing actions, as set forth by Kim Geyer, were corroborated by the testimony of Parma police officers in a few instances. The testimony of other witnesses also documented this behavior.

**{¶47}** Appellant claims that the Geyers' complaints are the oversensitive reactions of people who have animosity for her landlord. The July 26, 2012 timeline of events documents how that is not the case. After a visit from the police prompted by appellant's extremely loud music, appellant was observed by Kim in the Geyers' front yard menacing them. This prompted a second call to the police and a second citation. The same evening, additional odd behavior designed to annoy the Geyers resulted in a third call. The police then transported appellant to the hospital for evaluation. The Geyers were not the only ones to testify about appellant's

harassing and annoying behavior on that day. Kim's testimony was corroborated by the responding police officers and the landlord's half-sister. As a result, the weight of the evidence supports these convictions.

### III. Conclusion

{¶48} Appellant's convictions for disorderly conduct, disturbing the peace, criminal trespass, open burning, and violating a TPO are supported by sufficient evidence and are not against the manifest weight of the evidence.

{¶49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MELODY J. STEWART, J., CONCUR