[Cite as *Parma v. Odolecki*, 2017-Ohio-2979.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104160**

# CITY OF PARMA

PLAINTIFF-APPELLEE

vs.

# DOUGLAS E. ODOLECKI

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED IN PART, VACATED IN PART,
AND REMANDED

Criminal Appeal from the
Parma Municipal Court
Case Nos. 2014 CRB 02839 and 2015 CRB 30555

**BEFORE:** Laster Mays, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 25, 2017

-i-

**ATTORNEY FOR APPELLANT**

John W. Gold
P.O. Box 804
Brunswick, Ohio 44212


**ATTORNEYS FOR APPELLEE**

Timothy G. Dobeck
Law Director

By:   L. Christopher Frey
        John Spellacy
Assistant City Prosecutors
City of Parma - Law Department
6611 Ridge Road
Parma, Ohio 44129

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Douglas E. Odolecki ("Odolecki"), appeals his convictions for violation of municipal ordinances for two counts of obstructing official business, and one count each of disorderly conduct and misconduct at the scene of an emergency. Odolecki was sentenced to a total of 240 days in jail. After a thorough review of the record, we affirm in part, vacate in part, and remand.

## I. Background and Facts

{¶2} Odolecki purports to be a journalist and law enforcement accountability activist who operates under the name Greater Cleveland Cop Block. Odolecki was cited for two separate incidents, and both incidents involved Odolecki's cell phone recording of police activities. There is also police dashcam video evidence for the OVI checkpoint.

### A. June 13, 2014 — OVI Checkpoint

{¶3} On June 13, 2014, the city of Parma Police Department ("Parma PD") was conducting an OVI checkpoint near the intersection of State and Tuxedo Roads in the city of Parma. Odolecki stood on the sidewalk at the intersection of Brookpark and State Roads, a few blocks north of the checkpoint, holding a sign reading "Checkpoint Ahead — Turn Now" and periodically vocally warning drivers. The Parma PD asserts that several vehicles altered their course to avoid turning onto Brookpark toward the checkpoint area due to Odolecki's activities.

{¶4} Two officers approached Odolecki and informed him that the purpose of the

OVI checkpoint was to educate the public of the dangers of drinking and driving, and that pursuant to advice from their law department, Odolecki could remain at the location with the sign, but must remove the words "turn now." Odolecki refused and was arrested for obstructing official business, Parma Codified Ordinances ("PCO") 606.14.

### B. July 29, 2015 — Emergency Scene

{¶5} On July 29, 2015, Odolecki was riding his bicycle over the traffic and pedestrian bridge over a wooded ravine on Snow Road approaching the intersection at South Park Road. As Odolecki crossed the bridge, he observed two police vehicles and three police motorcycles with emergency lights activated in a small, park-like area just past the end of the bridge on the other side of the street, to his left. Police were responding to a 911 call from a mother advising that her 17-year-old autistic son was attempting to commit suicide by jumping off the bridge.

{¶6} A young man, approximately six-foot three inches tall and 300 pounds, was sitting on a guard rail and several officers were speaking with him. The young man's mother and her three young daughters, each under eight years of age, were also at the scene. Odolecki began recording the encounter with his cellular telephone from the other side of the street.

{¶7} Odolecki then crossed the street and began recording directly adjacent to the scene. An officer advised Odolecki that the young man was having a "bad day" and asked if he could "do that another time." Odolecki responded that he could not. Police Sgt. Gillissie approached Odolecki and asked that Odolecki remove himself. Odolecki

responded that he was in a public place, and alleges that he was physically contacted by Sgt. Gillissie.

{¶8} Odolecki moved across the street to the adjacent corner, loudly commenting on the police activities, including the statements, "this guy likes to violate peoples' rights" and "say hello to Youtube motherf\*\*ker." Sgt. Gillissie yelled across the street that Odolecki was offending small children and was again warned about a disorderly conduct charge. Odolecki responded that "you're offending people with your presence."

{¶9} Odolecki was arrested and cited for (1) obstructing official business (PCO 606.14), (2) disorderly conduct (PCO 606.14), and (3) misconduct at the scene of an emergency (PCO 648.07). Officers stated Odolecki interfered with their ability to do their jobs, because the young man was suicidal and autistic. Police were required to leave the crisis response situation to address Odolecki's actions.

### C. Trial

{¶10} The cases were consolidated for trial. After a jury trial, Odolecki was convicted of all counts and sentenced to a 240-day jail term. The instant appeal followed.

## II. Assignments of Error

{¶11} Odolecki advances 11 assignments of error:

I. Appellant's conviction for obstruction of official business on June 13, 2014 was against the manifest weight of the evidence because the act of holding a sign warning motorists of a nearby OVI checkpoint does not hamper or impede the operation of that checkpoint.

II. Appellant's conviction for obstruction of official business was against the manifest weight of the evidence because the act of holding a sign on a street corner that reads "DUI checkpoint ahead — turn now" is speech

protected by the First Amendment, entitling appellant to the affirmative defense of privilege.

III.     The trial court abused its discretion when it excluded evidence that appellant was exercising his privilege to protest against the city of Parma's unconstitutional OVI checkpoint scheme and such error was not harmless because it deprived appellant of the opportunity to establish an affirmative defense.

IV.     The appellant's conviction for obstruction of official business, misconduct at the scene of an emergency and disorderly conduct on July 29, 2015 was against the manifest weight of the evidence because act of filming the city of Parma police in the performance of their duties is conduct protected by the First Amendment entitling appellant to the affirmative defense of privilege.

V.     The city of Parma failed to prove the mens rea condition of misconduct at the scene of an emergency.

VI.     The city of Parma failed to prove that Mr. Odolecki engaged in meddlesome or osteperous conduct at the scene of an emergency.

VII.     Mr. Odolecki's conviction for misconduct at the scene of an emergency must be reversed because as a journalist he is exempt from the statute's application.

VIII.   Telling the city of Parma police to say hello to Youtube motherf**ker is speech protected by the First Amendment and entitles appellant to the affirmative defense of privilege as it pertains to his convictions for obstruction of official business, misconduct at the scene of an emergency and disorderly conduct on July 29, 2015.

IX.     The trial court committed reversible error when it denied appellant's Rule 29 motion for acquittal at the close of the city's case in chief.

X.     The trial court abused its discretion when it admitted video from incidents involving persons other than appellant which had no connection to the events at issue for the purpose of proving intent pursuant to Evid.R. 404(B).

XI.     The trial court abused its discretion when it imposed consecutive sentences without making statutorily mandated findings in support thereof

and advocated for the use of violence against the appellant.

## III. Law and Analysis

### A. Sufficiency and Manifest Weight of the Evidence

{¶12} The crux of Odolecki's arguments in assigned errors I through IX is that his convictions are against the manifest weight and sufficiency of the evidence. We combine those errors for analysis.

{¶13} "A claim that a conviction is unsupported by sufficient evidence tests whether the state has met its burden of production at trial." *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 32, citing *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *Thompkins* at 390. The question is not whether the prosecution's evidence "is to be believed, but whether, if believed, the evidence admitted at trial supported the conviction." *Rudd* at ¶ 32, citing *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25. The court must view the evidence in a light most favorable to the prosecution and determine whether "'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶14} In entertaining a manifest weight challenge, we sit as a thirteenth juror and intercede only where it is apparent that "a jury has 'lost its way.'" *State v. Stewart*, 8th Dist. Cuyahoga No. 86411, 2006-Ohio-813, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The weight-of-the-evidence standard "addresses

the evidence's effect of inducing belief." *Rudd* at ¶ 61, quoting *State v. Wilson*, 113 Ohio

St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387.

### 1. June 13, 2014 — Obstruction of Official Business

**{¶15}** PCO 606.14 parrots R.C. 2921.31:[1]

> (a)   No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

> (b)   Whoever violates this section is guilty of obstructing official business.   Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree.   If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony to be prosecuted under appropriate state law.   (R.C. 2921.31)

**{¶16}** Odolecki argues that the Parma PD   failed to prove the requisite elements

of the ordinance.   We recently addressed the elements of obstruction:

> Obstructing official business as defined in R.C. 2921.31(A) has five essential elements: "'(1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege.'" *Brooklyn v. Kaczor*, 8th Dist. Cuyahoga No. 98816, 2013-Ohio-2901, ¶ 7, quoting *State v. Kates*, 169 Ohio App.3d 766, 2006-Ohio-6779, 865 N.E.2d 66, ¶ 21 (10th Dist.). *See also State v. Dice*, 3d Dist. Marion No. 9-04-41, 2005-Ohio-2505, ¶ 19, and *State v. Brickner-Latham*, 3d Dist. Seneca No. 13-05-26, 2006-Ohio-609, ¶ 25.

*State v. Morris,* 8th Dist. Cuyahoga No. 103561, 2016-Ohio-8325, ¶ 14.

---

[1] R.C. 2921.31(B) provides that obstruction creating a risk of physical harm elevates to a fifth-degree felony, while PCO 606.14(b) indicates the physical harm elevation is pursuant to appropriate state law.

{¶17}   The city of Parma argues that the purpose of an OVI checkpoint is to educate the public and deter impaired driving.[2]   Odolecki's signs and purported verbal statements to drivers interfered with the ability of the officers to perform their duties.

{¶18}     The Fourth Amendment search and seizure constitutionality of OVI checkpoints was affirmed by the United States Supreme Court in *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).   The court applied the balancing test established in *Brown v. Texas,* 443 U.S. 47, 50-51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979):

> Consideration of the constitutionality of such seizures involves weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.

*Sitz* at 50.

{¶19}   The court determined that, while the checkpoints infringe on Fourth Amendment rights, the invasion is minimal when weighed against the safety consideration of protecting the public from drunk drivers.   The court also acknowledged that to maintain the balance, guidelines must be enacted, a feat left to the states that elect to conduct checkpoints.

{¶20}   Ohio upheld the use of sobriety checkpoints with constitutional guide posts in *State v. Orr*, 91 Ohio St.3d 389, 2001-Ohio-50, 745 N.E.2d 1036. *See also State v.*

---

[2]   "All vehicles passing through a checkpoint would be stopped and their drivers briefly examined for signs of intoxication."   *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 447, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).

*Bauer*, 99 Ohio App.3d 505, 651 N.E.2d 46 (10th Dist.1994); *State v. Bryson*, 142 Ohio App.3d 397, 402, 755 N.E.2d 964 (8th Dist.2001).

> "Where there is no consent, probable cause, or Terry-type[3] reasonable and articulable suspicion, a vehicle stop may be made only where there minimally exists (1) a checkpoint or roadblock location selected for its safety and visibility to oncoming motorists; (2) adequate advance warning signs, illuminated at night, timely informing approaching motorists of the nature of the impending intrusion; (3) uniformed officers and official vehicles in sufficient quantity and visibility to 'show the police power of the community;' and (4) a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated standards and neutral criteria." *State v. Goines,* 16 Ohio App.3d 168, 170-171, 474 N.E.2d 1219, 1221-1222 (1984), quoting *State v. Hilleshiem*, 291 N.W.2d 314, 318 (Iowa 1980).

*Id.* at 509.

{¶21} The Ohio State Highway Patrol's best practices guidelines advise that media releases are to be published alerting the public of the time and place of upcoming checkpoint operations. Most local enforcement agencies have adopted the practice. *Compare Ashtabula v. Presciano*, 11th Dist. Ashtabula No. 2011-A-0068, 2012-Ohio-3418, ¶ 31, citing *Bauer*, *supra* at 512 (questioning whether the pre-checkpoint publicity is a constitutional requirement under *Sitz.*)

{¶22} A checkpoint must be positioned so that vehicles that do not wish to enter the checkpoint area must be able to exit or otherwise remove themselves. *State v. Graham,* 8th Dist. Cuyahoga No. 57622, 1990 Ohio App. LEXIS 4744, *13 (Nov. 1, 1990). *See, e.g.,* *Bryson*, *supra*, where we affirmed the trial court's grant of a motion to suppress where an officer followed a defendant who elected to legally exit a sobriety checkpoint prior to entering the checkpoint funnel, stopped the defendant and observed contraband in the vehicle.

---

[3] *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{¶23} The city of Parma argues that *Dayton v. Van Hoose,* 2d Dist. Montgomery C.A. No. 18053, 2000 Ohio App. LEXIS 5764 (Dec. 8, 2000), supports its position in this case. In *Van Hoose*, the appellants asked police to relocate a prostitution decoy operation away from their home where their 11-year-old grandson was also present observing the activities. Police refused and appellants began yelling to prospective customers that the decoy was a police officer. Police directed them to stop, but they continued. *Id*. at *2.

{¶24} Appellant appealed the finding of guilt on the charge of obstructing official business. *Id*. at *3. Appellants launched a direct challenge to the constitutionality of the ordinance for impinging on their First Amendment right to free speech.

{¶25} The court held that the ordinance "is justified and narrowly tailored to permit the significant government interest of allowing public officials to conduct their business without interference." *Id*. at *8. The *Van Hoose* court also affirmed the trial court's finding that the continued behavior of "hollering" that the decoy was really an officer where evidence demonstrated that a potential customer took heed and waved off the decoy thwarted police efforts was not against the manifest weight of the evidence. *Id.* at *15.

{¶26} The Ohio Supreme Court has not spoken definitively to the issue of printed and verbal warnings of police activity constituting an overt act for obstruction purposes. However, this court, the Sixth Circuit Court of Appeals, and a number of Ohio appellate courts have recognized that, in some instances, language may rise to the level of an overt act. "[C]ourts have taken a case-by-case approach while mindful that inclusion of mere speech as a proscribed conduct may run afoul of the constitutionally protected right of

freedom of speech." *Parma v. Campbell*, 8th Dist. Cuyahoga Nos. 79041 and 79042, 2001 Ohio App. LEXIS 4907, *11 (Nov. 1, 2001).

{¶27} In *Patrizi v. Huff*, 690 F.3d 459, 2012 U.S. App. LEXIS 18082 (6th Cir. 2012), the Sixth Circuit Court of Appeals discussed the United States Supreme Court's recognition of limitations on First Amendment protections relating to citizen interactions with local police activities. *Patrizi* involved a civil rights suit under 42 U.S.C. 1983 against the Cleveland Police Department.

{¶28} Ms. Patrizi, a licensed attorney, was at a night club with friends. Police arrived at the club in response to an assault complaint by Ms. Wallace. Wallace identified the alleged perpetrators who were escorted outside. The perpetrators included friends of Patrizi and she accompanied them in exiting the building.

{¶29} Officers testified that Patrizi "continuously interjected" during their attempts to investigate, advising that the parties were not required to answer the questions, that she was a defense attorney and that she was representing her friend. *Id*. at 462. The officers said that Patrizi impeded their ability to investigate, pointed her finger in their faces, and when the officer asked her to leave, she "swung her arm around" and stated that she did not "have to go anywhere." *Id*. Patrizi was arrested for obstructing official business under Cleveland Codified Ordinances 615.06(A), the local codification of R.C. 2921.31.

{¶30} The court determined, based on video evidence from the club that conflicted with the testimony of the officers, that Patrizi's actions did not constitute an affirmative act for purposes of obstruction because she addressed the officers in a "calm and measured

manner, * * * did not ignore instructions" from the officers, and "did not in any way exhibit aggressive, boisterous, or unduly disruptive conduct." *Id*. at 465-466, citing *Cleveland v. Kristoff*, 8th Dist. Cuyahoga No. 80086, 2002 Ohio App. LEXIS 1276, at *4 (Mar. 21, 2002) ("courts have affirmed convictions for obstruction of official business only when the manner and context of the boisterous statement prevented a public official from carrying out his or her lawful duty.")

{¶31} Illuminating here, the court also explained:

> *The Supreme Court has recognized First Amendment limitations on the conduct that state municipalities may outlaw with respect to interruption of police activity.* In *Houston v. Hill*, 482 U.S. 451, 455, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), the Court held that a Houston ordinance that made it illegal to "oppose, molest, abuse or interrupt any policeman in the execution of his duty" was substantially overbroad and therefore unconstitutional. The Court explained that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" and that *"[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."* *Id*. at 461-63. Accordingly, the Court concluded that because the "Houston ordinance" was not "narrowly tailored to prohibit only disorderly conduct or fighting words" it impermissibly captured protected speech. *Id*. at 465. Although Hill is not directly relevant insofar as the present case does not concern a First Amendment challenge, Hill's explanation of what conduct may and may not be criminalized must nevertheless inform this court's analysis. *See Swiecicki v. Delgado*, 463 F.3d 489, 498, 2006 U.S. App. LEXIS 23454 (6th Cir. 2006) ("An officer may not base his probable-cause determination on speech protected by the First Amendment."). Thus, despite any arguable ambiguity in the Ohio state courts' jurisprudence, the U.S. Supreme Court has clearly established that *nonaggressive questioning of police officers is constitutionally protected conduct.* Patrizi's actions fall precisely within that protected ambit because, when the facts are viewed in her favor, *her conduct did not cross the line into fighting words or disorderly conduct prohibiting the officers from conducting their investigation.*

(Emphasis added.) *Id*. at 466-467.

{¶32}    Odolecki's sign and statements were not directed at the police officers but at the public. The Parma PD denies that the citation was issued solely because of the warning sign, but also because officers observed Odolecki approach several vehicles that were signaling to turn onto the street containing the checkpoint. The officers state that after Odolecki's approach, the vehicles changed direction.

{¶33}    Checkpoint warnings by the authorities are constitutionally required to inform the public of the possibility of detention. *Bryson*, 142 Ohio App.3d at 402, 755 N.E.2d 964.   Odolecki's sign served the same purpose of warning the public of the sobriety checkpoint.   The vehicles had not yet approached the area beyond which they could not voluntarily exit the checkpoint funnel so the statement "turn here" was accurate as to the legal option to do so, and vehicles were not required to do so.   Further, the police would have no right to follow vehicles that chose to turn around prior to entering the funnel.   *Bryson* at 403.[4]   The Parma PD has advanced no case law supporting their position that the words constituted obstruction.    There is no evidence in the record that the officers heard the content of the conversation between Odolecki and the vehicle occupants who elected to change direction.

{¶34}    Not only do we find a failure to establish that the warning was an "overt act intended to prevent" the officers from educating drivers, or discovering drunk drivers, an

---

[4] Police testified that they also employ an observation car that follows vehicles who elect to turn off prior to the funnel area to see if the vehicle has any violations such as a broken light. That practice is specifically prohibited by our finding in *Bryson*, perhaps justifying the advice to "turn off."

additional element of obstruction is the presence of an illegal act. *Jackson,* 8th Dist. Cuyahoga No. 97743, 2012-Ohio-4278, ¶ 25. Even assuming that the intent to warn and obstruct is clear:

> [T]he warning was not directed to persons whom the evidence revealed to have been either acting illegally or to have begun activity intended to culminate in illegality. Thus, only one of the two elements necessary to establish an offense was present and the offense was not proved.

*Warrensville Hts. v. Wason*, 50 Ohio App.2d 21, 25-26, 361 N.E.2d 546, ¶ 26 (8th Dist.1976). *See also Morris*, 8th Dist. Cuyahoga No. 103561, 2016-Ohio-8325, ¶ 14.

**{¶35}** Thus, we find that the evidence is insufficient to support all elements of the charge of obstruction. We vacate the conviction for obstruction in this case, and further determine that our decision on this issue renders the remaining errors relating to the June 13, 2014 obstruction conviction moot.

### 2. July 29, 2015 — Misconduct at an Emergency, Disorderly Conduct, and Obstruction of Official Business

**{¶36}** The mother testified that her family was at home baking. The young man became agitated, expressed that he could not do anything right, and said he was going to jump off of the bridge. The mother and daughters left the house to follow him. She called the son's psychologist and also called 911, asking for help because her son was too large and strong for her to physically handle. Two officers arrived as she attempted to hold on to her son to prevent him from climbing over the guardrail into the bridge area. The officers were succeeding in calming the son. Several other officers arrived.

**{¶37}** The video of events reflects Odolecki approaching the scene on a bicycle,

riding down the sidewalk area on the other side of the four-lane street. The activity scene is to his left, slightly beyond the bridge area in a small, park-like area at an intersection. There are two police cars and three police motorcycles with emergency lights flashing.

{¶38} Odolecki proceeds to film as he crosses the bridge, and stops on the corner across from the scene. The young man is sitting on a guard rail, an officer is speaking with him and another officer is speaking with the mother and three daughters. Odolecki crosses the street and stands recording just feet from the scene.

{¶39} Police testified Odolecki's presence agitated the teen who became very upset about being recorded, and again threatened to jump. The video shows the officers and family members speaking with each other and looking at Odolecki. At this point there were four officers speaking with the young man, indicating an escalating situation of concern.

{¶40} The officer standing with the family politely stated to Odolecki, "he's having a real bad day, can you forego this right now?" Odolecki responded, "no, I cannot." The officer repeated, "he's having a real bad day," Odolecki interrupted, "that's good," as the officer continued, "and you're not helping." Odolecki responded, "neither are you, probably."

{¶41} Odolecki now has the attention of everyone. The video shows Sgt. Gillissie leaving the officers who were with the young man, walked over to Odolecki, and informed him the young man was a juvenile who could not be recorded without the mother's permission. Sgt. Gillissie requested that Odolecki move from the area.

{**¶42**}     The camera view briefly shifted.  Odolecki told the sergeant not to "touch his sh*t," and that he was "not going to take a walk because this is public f**king property."  Sgt. Gillissie advised Odolecki to take a walk or be arrested for obstruction. The camera view again shifted and Odolecki moved quickly across the street, positioned himself on the adjacent corner, remarking loudly along the way, and yelling "its public f**king property, arrest me now."

{**¶43**}   Odolecki then began yelling and pointing, stating that one of the officers "likes to violate people's rights," and "welcome to Youtube, motherf**ker."  Two of the officers walked over to Odolecki and informed him that he was under arrest.

### a.     Obstruction of Official Business

{**¶44**} The officers did not address Odolecki while he was recording the activities from the other side of the street and the evidence does not support that the legal act of recording was the basis for the citation.  The choice to enter the area to record the situation, refusal to relocate or cooperate, aggressive behavior and profanity, and distracting the police from attending to the emergency situation, all of which served to upset the young man and the family, constitute the act that brings Odolecki before this court.

{**¶45**}   The mother testified that she was upset that Odolecki was recording her children, using profanity in front of her three daughters, and that she was afraid because he "was so aggressive."

> MOTHER:   I was scared, I was scared for my son because he was getting
> angry again and I know I'm not allowed to tell you what he said

but the girls were scared, we were already having a really hard time as it was and I just wanted him to go way and leave us alone and stop screaming at us.

(Tr. 146.) The officers testified that the young man became agitated when he saw that he was being video recorded and began crying, stating that he might as well commit suicide since the incident was being recorded. Officer Tellings testified that the teen made the comment that "I might as well jump now and then it started to get worse you can see him putting his head down probably starting you know almost start crying again."

{¶46} As the video, the testimony of the officers and the testimony of the mother confirms, Odolecki's behavior impeded the officers in performing their duties. *Patrizi*, 690 F.3d 459, 2012 U.S. App. LEXIS 18082; *Campbell*, 8th Dist. Cuyahoga Nos. 79041 and 79042, 2001 Ohio App. LEXIS 4907, at *12-13 (obstruction of official business is found where "the manner and context of the boisterous statement prevented a public official from carrying out his or her lawful duty."). We find that the jury did not lose its way and the evidence was sufficient for the conviction.

### b. Misconduct at an Emergency

{¶47} PCO 648.07(a)(1), misconduct at an emergency, provides:

(a) No person shall knowingly do any of the following:

(1) Hamper the lawful operations of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind;

* * *

(d) As used in this section:

(1) "Emergency facility" has the same meaning as in Ohio R.C. 2909.04;

(2) "Emergency facility person" is the singular of "emergency facility personnel" as defined in Ohio R.C. 2909.04;

(3) "Emergency medical services person" is the singular of emergency medical services personnel as defined in Ohio R.C. 2133.21.

(R.C. 2917.13; Ord. 53-03.  Eff. Mar. 3, 2003.)

**{¶48}** Odolecki argues that he did not act knowingly because he was not aware that the situation was an emergency. "Knowingly" is defined in R.C. 2901.22(B):

(B)  A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist.  When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶49}** The trial court specifically instructed the jury on the mens rea:

COURT:    Before you can find Defendant guilty of this charge, you must find beyond a reasonable doubt that on or about July 29, 2015, in the city of Parma, Cuyahoga County, State of Ohio, the Defendant knowingly hampered the lawful operations of a law enforcement officer in his duties at an emergency.  A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result.  A person has knowledge of circumstances when he is aware that such circumstances probably exist.  Since you cannot look into the mind of another, knowledge is determined from all facts and circumstances in evidence.  You will determine from these facts and circumstances whether there existed at the time in mind of the Defendant an awareness of the probability that he was hampering the lawful operation of a law enforcement officer in his duties at an emergency.

(Tr. 325.)

{¶50} While the ordinance, which tracks R.C. 2917.13, does not narrowly define the circumstances that may be deemed an emergency, case law interpreting the legislative intent is illuminating:

> The Legislative Service Commission's Note about this offense explained that this section is "aimed primarily at controlling bystanders and curiosity seekers at emergency scenes, in order to permit police, fire brigades, rescue and medical personnel, and others, to perform their duties with the utmost efficiency at such times." The offense is described as "a specific tool for crowd control at emergencies" but the offense "need not necessarily arise from the collective conduct of a crowd but may be committed by one person." The Note sets forth an example of "one who simply gets underfoot at an emergency and is consciously aware he is doing so * * *." R.C. 2917.13, Legislative Service Commission Note (1973).

*State v. Bryant*, 9th Dist. Lorain No. 09CA009736, 2011-Ohio-4555, ¶ 22.

{¶51} Odolecki approached a scene with five police vehicles, flashing lights, and citizens. The fact that Odolecki began recording upon approach indicates a recognition that a situation was in progress involving police intervention. Officers did not interfere with Odolecki's initial filming attempts from the other side of the street. It was only after Odolecki imposed himself directly in the area that a request was made for him to cease. The

record demonstrates Odolecki's direct presence was causing distress to the young man and family as well as a distraction to the officers attempting to resolve the situation.

**{¶52}** The purpose of the statute is to "give law enforcement the power to exercise extraordinary control to protect the public." *Kinzer v. Schuckmann,* 850 F.Supp.2d 785, 794, 2012 U.S. Dist. LEXIS 15024 (S.D. Ohio 2012). Therefore, "a measure of deference" is owed to an officer's assessment of danger to bystanders and discerning impediment to efforts and safety of the officers attempting to manage the situation. *Id.*

**{¶53}** Odolecki claims privilege as a media representative pursuant to PCO 647.07(B) (R.C. 2917.13(B)). We first observe that the ordinance does not expand media protection beyond that of the general public. "[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." (Citations omitted.) *Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

**{¶54}** However, a determination of Odolecki's asserted status as a media representative is not required because there is no prohibition of Odolecki's ability to record the scene. Odolecki's choice to position himself immediately adjacent to the scene, and the obnoxious behavior that followed, upsetting the young man, his family and distracting the officers, underlie the charge. Further, the fact that Odolecki was on public property does not overcome the right of the officers to determine how best to address and manage the situation. *Kinzer* at 794.

**{¶55}** We find that the jury's finding is supported by the manifest weight and sufficiency of the evidence, rendering the remaining errors as to the conviction moot.

### c. Disorderly Conduct

**{¶56}** Parma's disorderly conduct ordinance provides, in part:

648.04 DISORDERLY CONDUCT.

(a) No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following:

\* \* \*

(2) Making unreasonable noise or offensively coarse utterance, gesture or display, or communicating unwarranted and grossly abusive language to any person;

**{¶57}** This court considered a challenge to PCO 648.02(a)(2), which tracks R.C. 2917.11, in *Parma v. Kannenberg*, 8th Dist. Cuyahoga No. 100370, 2014-Ohio-5681. Appellant appealed her convictions for disorderly conduct, trespassing, open burning, and violation of a temporary protection order, resulting from an ongoing dispute with a neighbor. *Id.* at ¶ 1. The appellant argued on appeal that standing outside yelling obscenities early in the morning was an exercise of her First Amendment rights, did not cause harm to the neighbors who lodged the complaint, requiring reversal of her conviction for disorderly conduct. *Id.* at ¶ 30.

**{¶58}** The framework for analyzing whether the disorderly conduct prohibition has a chilling effect on protected speech is set forth in *State v. Hoffman*, 57 Ohio St.2d 129, 387 N.E.2d 239 (1979):

A person may not be punished under R.C. 2917.11(A)(2) for "recklessly caus[ing] inconvenience, annoyance, or alarm to another," by making an "offensively coarse utterance" or "communicating unwarranted and grossly abusive language to any person," unless the words spoken are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace.

*Id*. at paragraph 1 of the syllabus, quoted by *Kannenberg* at ¶ 30.

**{¶59}** A challenge to the content of the defendant's language requires application of a First Amendment analysis to ensure protection of the defendant's constitutional rights. Conversely, a First Amendment analysis is not required where the focus is on unreasonable noise, "and the use of fighting words is not an element of the offense." A city may legally cite those who are yelling and otherwise disturbing the peace. *Kannenberg* at ¶ 30, citing *Fairborn v. Grills*, 2d Dist. Greene C.A. No. 92 CA 92, 1994 Ohio App. LEXIS 2467, *5 (June 8, 1994); *Warrensville Hts. v. Brown*, 8th Dist. Cuyahoga No. 89346, 2008-Ohio-126, ¶ 12.

**{¶60}** In this case, the officers and the mother testified that it was the loud and aggressive manner of the speech during an emotionally charged emergency situation, not the profanity alone, that upset the young man and frightened the mother and her daughters. Therefore, a First Amendment analysis is not required. Further, based on the aforecited facts, the conviction for disorderly conduct is not against the manifest weight of the evidence and the evidence was sufficient to support the conviction.

**B.    Improper Admission of Video.**

**{¶61}**    Addressing the tenth assigned error, Odolecki challenges the admission of exhibit No. 5, a compilation of several videos posted on Odolecki's Youtube account where the July 29, 2015 incident is also posted.   Odolecki objects to the admission into evidence of a YouTube Cop Block show video containing an interview with Odolecki regarding the July 29, 2015 arrest, and several videos of others exercising their constitutional rights against police.   Odolecki argues the evidence did not fall within the "other acts" evidence admissible under Evid.R. 404(B) because it did not go to Odolecki's intent in the case.

**{¶62}**    Evid.R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶63}**   A trial court has broad discretion in excluding or admitting  evidence. The ruling of the trial court on the admissibility of evidence will be upheld absent an abuse of that discretion. *In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 59. "An abuse of discretion implies that the court's decision was unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶64}**  Evidence of other acts requires a three-step analysis: (1) is the evidence relevant to make a material fact more or less probable (Evid.R. 401); (2) is the evidence presented to prove the character of the defendant or for legitimate Evid.R. 404(B) purposes;

and (3) whether the probative value is substantially outweighed by the danger of unfair prejudice. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. *See* Evid.R. 403. Where there is no reasonable possibility that exclusion would have affected the trial result, the error, if one occurred, is harmless. *State v. Chambers,* 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 40, citing *State v. Boczar*, 11th Dist. Ashtabula No. 2007-A-0034, 2008-Ohio-834, ¶ 50.

{¶65} Viewing the totality of the evidence introduced in this case, as detailed in our findings on the sufficiency and manifest weight of the evidence, we find the introduction of the evidence was harmless. *Chambers* at ¶ 41.

{¶66} The tenth assigned error is overruled.

## C. Failure to Make Statutorily Mandated Findings in Imposing Consecutive Sentences.

{¶67} We address Odolecki's eleventh, and final, assigned error. Odolecki's obstruction conviction (PCO 606.14) for the June 14, 2014 charge is reversed, which vacates 90 days of the 240-day sentence and $200 of the $700 total fine. The city of Parma is correct that the statutorily mandated findings supporting consecutive sentences are not required here. R.C. 2929.41(B) allows sentences for misdemeanors to be served consecutively as long as the aggregate term does not exceed 18 months without recitation of the requisite findings. The distinction between the two is a prison term, applicable to felony offenders, and jail for the misdemeanor sentence. *State v. Alexander*, 8th Dist. Cuyahoga No. 102708, 2016-Ohio-204, ¶ 6.

{¶68} The eleventh assignment of error is overruled.

## IV. Conclusion

**{¶69}** Odolecki's conviction on the June 13, 2014 charge of obstruction is reversed and the sentence is vacated. The remaining convictions for the July 29, 2015 incident are affirmed.

**{¶70}** Judgment is vacated in part, affirmed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY